MARION STERNS *vs.* HIGHLAND HOTEL COMPANY.

Hampden.    September 19, 1940. — October 30, 1940.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence*, Revolving door.   *Proximate Cause.*

Injuries, sustained by an elderly woman guest who fell as she was leaving a hotel through a revolving door of standard make, not defective, with no attendant at hand, when one entering through the door accelerated its speed and caused it to push her so that she lost her balance in stepping down an obvious step close to the outside of the door, could not rightly be found to have been caused by negligence of the proprietor of the hotel.

TORT.   Writ in the Superior Court dated July 31, 1936.

The case was tried before *Broadhurst*, J., and in this court was submitted on briefs.

*R. W. Crowell & T. B. Moriarty*, for the plaintiff.

*I. R. Shaw & J. A. Anderson, Jr.*, for the defendant.

COX, J.   The sole question in this case is whether the trial judge was in error in directing a verdict for the defendant.

The jury could have found that on the day of her injury, the plaintiff, a retired school teacher, seventy-six years of age, admittedly an invitee of the defendant, entered its hotel in Springfield by the main entrance on Hillman Street and was injured as she was leaving by the same entrance an half hour later.   The floor level of this entrance, where there is a revolving door, is approximately four and one half inches higher than the sidewalk on Hillman Street, and this door is so placed that when any of its four panels is at right angles with the sidewalk, the rubber strip, one and one half inches wide, on the edge of the panel, is five and one half inches in from the edge of the step from Hillman Street.   The plaintiff testified that, as they were leaving the lobby of the hotel, her niece entered the revolving door first and she followed in the next quadrant.   When she

had proceeded half-way or a little more through the door, one or two men on their way into the hotel entered the quadrant that had been occupied by her niece. "The door was given a push by this man or one of them, causing the back panel of the quadrant by which the plaintiff was leaving to strike . . . [her] in the back, causing her speed . . . to be accelerated; she was pushed forward and as she stepped out of the door, her foot went beyond the level space in front of the door . . . down onto the sidewalk, causing her to lose her footing and fall . . . ." She further testified that she fell "after she had left the door and that the cause of the fall was that she had no place to put her foot after she left the door except in the 'thin air.'" There was no doorman "tending" the door, nor were there any handles on the revolving wings, although there were two brass push bars on each panel. The door was of a standard make with a maximum opening between the wings of three feet seven inches, and when it was open for maximum "ease" of exit the distance from the edge of the outer step to the door panel behind one who is leaving varies from twenty-seven to forty inches. Each revolving panel is thirty-six inches wide and contains a light of transparent glass eighteen inches wide extending from within twenty-three inches of the bottom of the panel to approximately the same distance from the top. The permanent circular wings of the door are each equipped with a transparent glass panel. There was no evidence tending to prove any defect in the revolving mechanism of the door or any defect with respect to its rubber strips.

The plaintiff contends that the entrance in question was not in a reasonably safe condition. She concedes that the drop of four and one half inches to the sidewalk "might not be considered dangerous when so located with respect to an ordinary swinging door"; that whether she would have fallen if her speed had not been accelerated is unknown, but that the possibility of this acceleration was a factor that the defendant should have reasonably anticipated; that the failure to have a doorman in attendance or to provide the door with grab bars is no evidence of negli-

gence, "providing however, that the door is properly constructed, located and maintained." In short, the plaintiff contends that the door was improperly located and that its proximity to the edge of the step to the sidewalk created a danger that was increased by the acceleration of her speed in passing through the door; that this speed could have been controlled by a doorman or by the use of grab bars which also would have afforded the plaintiff an opportunity of steadying herself before leaving the door and stepping to the sidewalk.

The defendant's duty to the plaintiff was to exercise reasonable care to keep its premises in a reasonably safe condition for her use according to the invitation, or, at least, to warn her against any dangers attendant upon such use that were not known to her or obvious to an ordinarily intelligent person, and either were known or, in the exercise of reasonable care, should have been known to the defendant. *Lord* v. *Lowell Institution for Savings,* 304 Mass. 212, 215, and cases cited.

It is a matter of common observation that in "entering and leaving stores, halls, . . . office buildings, and other buildings . . . adjoining surfaces are frequently at different levels, and the difference in level has to be overcome by one or more steps of greater or less height or by some other device. . . . We cannot think that such a construction is of itself defective or negligent." *Ware* v. *Evangelical Baptist Benevolent & Missionary Society of Boston,* 181 Mass. 285, 286. It was said by Rugg, J., in *Hoyt* v. *Woodbury,* 200 Mass. 343, at page 345: "Persons entering . . . [the defendant's] building were charged with knowledge that they were not entering from a perfectly level sidewalk, and that generally the floors of buildings are not of precisely the same elevation as the sidewalk, even where it is level. Customers entering or leaving stores cannot be unmindful of these almost universally prevailing conditions. Owners of buildings have a right to proceed in their constructions in view of this common observation on the part of the public and assume in the actions of those who may frequent their buildings the exercise of ordinary circumspection as to their

footing." Steps of greater or less height are the usual, but not the only, means of overcoming such differences in levels, and it is the general rule in this Commonwealth that, in the absence of some unusual condition, by the employment of a step for such a purpose the landowner violates no duty to his invitees. *Hoyt* v. *Woodbury,* 200 Mass. 343, 345, 346. See *Lord* v. *Sherer Dry Goods Co.* 205 Mass. 1; *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258, 260, and cases cited.

The door was of standard make, of a kind in common use, with no evidence of any defect in its condition, and there was nothing to show that it was not entirely safe when properly used by persons passing through. *Smith* v. *Johnson,* 219 Mass. 142. *Buzzell* v. *R. H. White Co.* 220 Mass. 129. It was said in the *Smith* case, which was one involving a swinging door, at pages 142 and 143: "If . . . the ordinary speed of the door was increased by another customer negligently pushing it toward . . . [the plaintiff], the defendants are not responsible therefor," and that in the circumstances of the case, the failure to furnish a doorkeeper in no way contributed to the plaintiff's injury. In the *Buzzell* case it was stated at page 131: "There is no more reason for an attendant in case of a revolving door than there was in case of the swinging doors in question in *Smith* v. *Johnson.*" In the *Buzzell* case there was evidence that, as the plaintiff was leaving the defendant's premises through a revolving door, its speed increased suddenly as if it had been pushed by someone, and it began to whirl around rapidly taking the plaintiff off her feet and throwing her violently to the floor. She did not trip or slip and the door was going so fast that it carried her along. She tried to get out quickly as the door came around to the exit, but it was going so fast that she could not. It was held that a verdict for the defendant was rightly directed. In *Norton* v. *Chandler & Co. Inc.* 221 Mass. 99, there was evidence that the revolving door in question was equipped with a device for the purpose of retarding the door as it revolved and to prevent its spinning, and that the defendant was negligent in permitting this device to fall into a

defective condition. Upon this state of the evidence, the case was distinguished from the *Buzzell* case. There was also evidence in the *Norton* case that, as the plaintiff was going through the door, a man was going out in a hurry on the other side, and it was said that, if the action of this man was the immediate cause of the door spinning and unexpectedly striking the plaintiff in the back, the connection between the defendant's negligence and the injury to the plaintiff was not necessarily broken thereby, and also that this was something that the defendant might be found to have reasonably anticipated. *Nersiff* v. *Worcester County Institution for Savings*, 264 Mass. 228, was a case where the door itself was defective. In *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, the court, in referring to the evidence tending to show that, as the plaintiff's intestate was passing through a revolving door, someone behind her caused it to revolve too rapidly and throw her "down a couple of steps to the sidewalk," said at page 108: "In those circumstances there would be no liability on the part of the defendant." In referring to other evidence tending to show that there was trouble with the operation of the door and that it was in a defective condition, the court said, at page 108: "It would be only upon this theory that liability could be fastened on the defendant." *Promisel* v. *Hotels Statler Corp.* 286 Mass. 15, was another case of an obviously defective revolving door in that one of the glass panels, which had been broken, had been replaced by a piece of opaque board. It was there said, at page 17, that the defendant was not responsible for negligent conduct of others in hurrying through the door, but that the fact that a third person moved the door did not necessarily break the causal connection of the defendant with the injury, if such action should have been anticipated, and, further, that the statement in the *Buzzell* case that an attendant upon a revolving door is not necessary was not made in regard to a defective door that the defendant must have known was liable to be swung by a person who could not see another in a position of danger.

In the case at bar, we have the circumstances of a re-

volving door that is in nowise defective, pushed by some-
one so that the speed of the plaintiff, as she was passing
through it, was accelerated, and, as she stepped out of the
door, her foot went to the sidewalk causing her to lose her
footing for the reason that there was no place to put her
foot after she left the door, "except in the 'thin air,'" and,
in addition to this, that the door was in proximity to the
step of four and one half inches down to the sidewalk. The
plaintiff alone testified as to the circumstances of her fall.

It is clear that the conditions at the entrance were open
and obvious, and only a half hour before the plaintiff's
injury she had passed over the step and through the door.
It must have been obvious to the plaintiff that the door
was adapted for the use of as many as four persons at the
same time on their way in and out of the hotel. In *Graham*
v. *Pocasset Manuf. Co.* 220 Mass. 195, the door, through
which the plaintiff was passing when injured, opened out
upon a stairway. It was seven and one half inches from
the floor back of the door to the top riser, and a person in
opening the door and stepping forward would step down
seven and one half inches to the top step. There was no
evidence that the stairway was improperly lighted, or out
of repair, or in a defective condition. The plaintiff con-
tended that the defendant was negligent in maintaining
the stairway as it was constructed without warning him
as to the manner of its construction. In the course of the
opinion it was said, at page 196: "The defendant was not
obliged to alter the original construction of its mill, but
could use it in the way for which it was designed unless in
so doing it exposed persons rightfully on the premises to
dangers which they had no reason to anticipate." It was
decided that, at the time the plaintiff was injured, he had
become a bare licensee. It was said, however, at page 197:
"We are of opinion that the presiding judge rightly ruled
that the defendant was not negligent in maintaining its
premises as shown by the evidence, or in failing to warn the
plaintiff of the condition of the premises." In *Callaghan* v.
*R. H. White Co.* 303 Mass. 413, 415, where the plaintiff
was struck and injured by a swinging door, it was held that

the defendant was not obliged to make different arrangements as to the use of the door since the conditions were open and obvious to an ordinarily intelligent person, and it was again pointed out that the defendant would not be liable for an injury due solely to the negligence of other customers in the operation of the doors. Where a condition is obvious to any ordinarily intelligent person, it is the general rule that there is no duty on the part of the defendant to warn of that condition. *Shaw* v. *Ogden,* 214 Mass. 475. *Kitchen* v. *Women's City Club of Boston,* 267 Mass. 229, 232. *Crone* v. *Jordan Marsh Co.* 269 Mass. 289. *Peterson* v. *Empire Clothing Co.* 293 Mass. 447. *McGuire* v. *Valley Arena Inc.* 299 Mass. 351. Compare *Kennedy* v. *Cherry & Webb Co., Lowell,* 267 Mass. 217; *Kelley* v. *Goldberg,* 288 Mass. 79; *Palmer* v. *Boston Penny Savings Bank,* 301 Mass. 540. The door was of a standard make, widely used, and it does not appear that grab bars, so called, as distinguished from push bars, are any part of the equipment of such a door. See *Buzzell* v. *R. H. White Co.* 220 Mass. 129. The fact that no attendant was present is not evidence of the defendant's negligence. In the circumstances, we are of opinion that there was no breach of any duty owed by the defendant to this plaintiff.

*Exceptions overruled.*