FLORENCE OLLIE BENTON v. UNITED BANK BUILDING COMPANY
AND UNITED CIGAR-WHELAN STORES CORPORATION.

(Filed 12 January, 1944.)

**1. Negligence § 3—**

Generally there is no duty resting on defendant to warn plaintiff of a dangerous condition, provided the dangerous condition is obvious.

**2. Negligence §§ 4b, 19a—**

In an action for damages allegedly caused by negligence of defendants, where plaintiff's evidence tends to show that the store of one defendant was in the building of the other defendant and opened off the lobby of the building through a plate glass door by a step down, that there was no

lack of light, either in the lobby or store, that plaintiff fell and was injured as she went through the door from the lobby into the store, although she could have seen the step down had she taken time to look as she opened the door, a motion for judgment of nonsuit was properly allowed. C. S., 567.

APPEAL by plaintiff from *Bobbitt, J.,* at March Term, 1943, of GUILFORD.

This is an action by the plaintiff to recover damages for personal injuries alleged to have been proximately caused by the negligence of the defendants.

It is alleged and there was evidence tending to prove that the defendant building company owned a large twelve-story bank building on the northeast corner of Elm and Washington Streets in the city of Greensboro, and that the defendant stores corporation leased from its codefendant a storeroom in said bank building located on the ground floor and in the northwest corner of said building and operated a cigar store therein; that there was a door opening from the inside of the main entrance lobby of the building to the storeroom; that there was a difference in the elevation of the floor of the main entrance lobby and the floor of the storeroom, that of the storeroom being six inches lower than that of the lobby; that there was a step down from the lobby to the storeroom immediately at the door leading from the lobby to the storeroom; that the plaintiff, intending to enter the cigar store from the lobby for the purpose of purchasing a watch wrist band, approached the door, pushed it open and stepped into the cigar store, and as she stepped in she fell to the floor, from which fall she received injuries.

It is alleged and contended by the plaintiff that the defendants were actionably negligent in that they failed to properly light the step down from the lobby to the storeroom and failed to give the plaintiff and the public proper warning of the existing conditions surrounding said step down. The defendants deny these allegations, and plead in bar of plaintiff's recovery her contributory negligence in failing to exercise due care in the use of the step down in entering the storeroom.

When the plaintiff had introduced her evidence and rested her case the defendants lodged motions for judgments as in case of nonsuit (C. S., 567), which motions were allowed, and from judgments, predicated on this ruling, dismissing the action, the plaintiff appealed, assigning error.

*Herbert S. Falk for plaintiff, appellant.*

*Frank P. Hobgood and Benj. T. Ward for United Bank Building Company, appellee.*

*Sapp & Sapp for United Cigar-Whelan Stores Corporation, appellee.*

SCHENCK, J.   It is not contended that the construction of the floor level of the storeroom six inches below the floor level of the main lobby of the building, from which the door led to the storeroom, constituted negligence.   The negligence stressed in the brief being confined to the allegations of failure to adequately light the step down immediately at the door between the lobby and the storeroom, and the failure to give warning or notice of such step down, which the plaintiff in her brief denominates as a "stumbling block."

Such light as was in the storeroom from the sun was diffused light, since such light could enter only from the two doors opening onto the west and the north side of the room and the sun had not reached its zenith at the time of the plaintiff's fall, about 11 or 11:30 o'clock a.m. The storeroom was lighted by six overhead or ceiling lamps with underslung globes, each of which was of 200 watts, one of which lights was about six feet from the door between the lobby and the storeroom and another about 15 feet from that door.   There were no windows in the storeroom to admit sun light.   The floors of the lobby and of the storeroom were of different material, different in color and different in construction.   There was no obstruction to the entrance into the storeroom through the door between it and the lobby.   There was no defect in the lighting in the lobby, it being in all respects similar to that in the storeroom.   If there were decorations (the evidence is in conflict) on the doors on the west and north side of the storeroom, such decorations could have cast no shadows from the sun into the storeroom owing to the position of the sun in the sky at that time of day with reference to the location of the building.

The plaintiff's testimony is to the effect that she entered the storeroom from the lobby to purchase a watch wrist band, and stated, "When you have your mind on shopping, it is quite different.   I had my mind on shopping," she "could see the floor through the door"; she "was looking directly in front," she "could see clearly into the store"; plaintiff further testified that if she had taken the time, opened the door and looked she could have seen the step down; that she did not have the time to look after she opened the door before she stepped, but that "no one was rushing me . . . I had my own time to go through the door"; that she was looking directly in front of her through the plate glass door; the evidence tends to show that the door between the storeroom and the lobby was a heavy one with a clear plate glass panel in it which extended from 12 inches above the floor to within a few inches of the top thereof, and had on it a latch which had to be thrown to open the door, as well as an air-check to make it close; that one was required to stop to open the door before entering it.

When the record is examined it appears that there is no evidence of lack of light either in the storeroom or in the lobby. The storeroom was 18 by 20 feet and was lighted by six overhead incandescent lamps each carrying 200 watts of electric current. The lobby was similarly lighted. The plaintiff is therefore relegated to her contention that shadows from the decorations on the two doors opening on the west and north side of the store, respectively, obscured the step down and thereby caused her not to see it and to fall. This contention is untenable for the reason that it was a physical impossibility for the diffused light of the sun through the glass panels of these two doors to have cast shadows from any decorations on the doors to the step down over which the plaintiff entered the storeroom—especially in view of the abundance of artificial light therein.

The evidence discloses that there was no sign or other warning at the step down at the door through which the plaintiff entered the storeroom, and it is stressfully urged by the plaintiff that this was negligence, or at least evidence of negligence on the part of the defendants. The plaintiff predicates this contention upon the assumption that the existence of different levels between the two floors, necessitating the step down, created a dangerous condition or "stumbling block" of which it was the duty of the defendants to give warning. This may have been a sound position if the danger had been a latent one, of which the defendants knew, or should have known, and of which the plaintiff, or the public, was not fixed with knowledge; but such is not the situation in this case. The plaintiff's testimony is to the effect that she could have seen the step down if she had taken time between the opening of the door and her first step into the storeroom to look, but that she did not take the time, although there was no reason to hurry. It was only necessary to avoid injury from it to take time to see it. The plaintiff, although not rushed, failed to take the time to see the condition, and was injured. There is no duty to give warning of the obvious. Was this difference in the levels of the two floors obvious? The plaintiff's testimony presages an affirmative answer. She says: "I stepped forward, and before I had time to examine anything, I fell. I did not have time to look down. I was looking directly in front of me. No one was rushing me. No one took hold of me or pushed me. No one was in front pulling me. Sure I had my own time to go through the door." And further, "In answer to your question if I had taken time, opened the door, looked, could I have seen this step down, my answer is, if I had thought there was any reason, I guess I could have. . . ."

Any danger incident to the difference in the levels of the two floors necessitating the step down being obvious to one who looked, there was no duty resting upon the defendants to give notice thereof. The law

imposes no duty upon one to give notice of a dangerous condition to another who has eyes to see and an unobstructed view of such condition, but fails to take time to see such danger. Generally, in the absence of some unusual condition, the employment of a step by the owner of a building because of a difference between levels is not a violation of any duty to invitees. Where a condition of premises is obvious to any ordinarily intelligent person, generally there is no duty on the part of the owner of the premises to warn of that condition. *Sterns v. Highland Hotel Co.,* 307 Mass., 90, 29 N. E. (2d), 721. There is no duty resting on the defendant to warn the plaintiff of a dangerous condition provided the dangerous condition is obvious. *Mulkern v. Eastern S. S. Lines,* 307 Mass., 609, 29 N. E. (2d), 919.

The case at bar is distinguished from *Mulford v. Hotel Co.,* 213 N. C., 603, 197 S. E., 169, in that in the latter case the plaintiff "came out of a brilliantly lighted room into a dimly lighted basement, and it may be inferred that her eyes had not become accustomed to the difference in illumination when she encountered the step," whereas in the instant case the lobby and the storeroom were equally and adequately illuminated; in the *Mulford case, supra,* it appeared that "the floors were uniformly colored and so were the walls," whereas in the instant case the floor of the lobby was of marble parallelograms 10 x 20 inches in size and of reddish tint, while the floor of the storeroom was of small white hexagonal tiles one inch by one inch in size and laid in dark cement. Both the coloring and shape of the tiles in the two floors were in strong contrast. In the *Mulford case, supra,* the defendant's negligence was admitted, but in the instant case the defendant's negligence is denied, and we are constrained to hold that it has not been made to appear by the evidence.

Since we are of the opinion, and so hold, that the judgments of nonsuit were properly entered for the lack of sufficient evidence to be submitted to the jury on an issue relating to the defendant's actionable negligence, the other assignments of error become immaterial and call for no animadversion from this Court. *Callahan v. Roberts,* 212 N. C., 223, 193 S. E., 265.

The judgment of the Superior Court is
Affirmed.