This is a suit arising out of personal injuries sustained by the plaintiff when she fell in the store of Ourso Company, located on the Plank Road near the city of Baton Rouge.
The petition shows that the department store of Ourso 
Company faces east on the Plank Road and that the dry goods department of said store and the grocery department are not on the same level, that there is a drop of some 81/4 inches from the dry goods department to the grocery department; that to take care of this difference in floor level there is a step on the grocery department side which is 2 1/2 inches from the floor level of the dry goods department, which step has a width of approximately 14 1/4 inches, and a drop of 4 3/4 inches to the level of the grocery department floor.
The petitioner alleges further that the step is so constructed that while walking from the dry goods department to the grocery department, which is in a northerly direction, it is practically impossible to see and observe the immediate drop in the floor; that when petitioner completed her shopping in the dry goods department she was attracted to the meat display case, which is located in the grocery department near the base of the step and on the northwest side thereof; that on the northeast side of the step there is a rack which contains bread, cakes and other delicatessen; that the color of the floor in the dry goods department and the grocery department are similar to the step, and that there is no sign or warning of any kind to warn invitees of the sudden drop in the floor and that it is impossible to see the step while walking from the dry goods department into the grocery department, unless one is looking down directly on the floor; that as a result of these circumstances she walked directly to the grocery department towards the meat counter, being attracted to the meat display, and upon arriving at the sudden drop from the dry goods department to the grocery department, she missed her step and fell into the grocery department, where she sustained various injuries itemized in her petition; that this was her first visit to Ourso Company store and that she had no knowledge or warning whatsoever of the sudden drop in the floor which caused her fall.
She alleges that the accident was caused solely by the negligence of Ourso Company in having this sudden drop in its floor levels, without any warning sign of any kind, in placing an attractive display which would necessarily divert the attention of a customer in the dry goods department to the extent of not noticing the sudden drop in the floor. She prays for judgment against the Travelers Insurance Company, as insurer of Ourso Company in the full sum of $9,500, plus legal interest and costs to cover the various personal injuries sustained by her.
In its answer the defendant admits that it is the insurer of Ourso Company and admits the allegations with reference to the difference in floor levels and with reference to the step between the two departments, but denies that there was any negligence on the part of Ourso Company. In the alternative, defendant avers that plaintiff was walking in the store in a careless and inattentive manner and without regard to existing conditions, which she knew or should have known with the exercise of ordinary care and caution; that the step in question was well lighted by a skylight, as well as by artificial light, and that any one using ordinary care in walking from the dry goods department to the other department could have seen the step, and the carelessness and negligence of plaintiff was a contributory cause to the accident which should bar her recovery.
After hearing the case the District Court, for written reasons assigned, came to the conclusion that plaintiff failed to show that Ourso Company were negligent and therefore rendered judgment in favor of the defendant and dismissed plaintiff's suit at her costs. Plaintiff has appealed.
The testimony is very much the same as the pleadings. The plaintiff, Mrs. Louise B. Knight, testified that she entered the department store on the dry goods side, accompanied by Mrs. S.H. Radford, one of *Page 510 
her neighbors; that this was her first visit to the store of Ourso Company, and at this point it may be stated that the grocery department of Ourso Company was constructed before the other department and had a front on the Plank Road of 371/2 feet by 165 feet, with a floor built of concrete. Some years later the dry goods department was built south of and adjoining the grocery department with a front on Plank Road of the same dimensions and a depth of the same dimensions, and with a floor built of oak blocks at a level 8 1/2 inches above the floor of the grocery department and connected with the grocery department by means of this step as set forth in plaintiff's petition. The plaintiff testified that she walked around in the dry goods department for the purpose of purchasing certain items, and as she arrived at the entrance of the grocery department she was attracted by the display of meat and that she thereupon proceeded towards the meat counter, not realizing that there was a drop in the floor, and as she arrived at the drop she lost her step and fell heavily in the grocery department.
Her neighbor, Mrs. Radford, testifies to the same effect. She states that she was aware of the step, having visited the store previously and having entered in the dry goods department from the grocery department where the step could be seen; that, however, the step could not be seen from the dry goods department unless one was looking down at the floor; that she forgot to warn her friend, Mrs. Knight, of the presence of this step.
Both Mrs. Knight and Mrs. Radford testified that on the day of the accident it had rained and that at the time of the accident, between 11 and 12 o'clock, it was cloudy and that the darkest spot in the store was at the entrance from one department to the other in other words, at the location of the step where the accident occurred. They both testified also that Mrs. Knight suffered severe injuries and that she was thereafter treated by Dr. Noto for body injuries, and by a Mississippi dentist for a broken tooth resulting from the accident; that she was confined to her home some 2 1/2 months and has continued to suffer pain since that time and is still unable to do her house work.
Mrs. Roger James, the daughter of Mrs. Knight, testified in corroboration of the disability and suffering sustained by her mother as a result of the accident. She also testified that she had a telephone conversation with reference to her mother's condition with one of the Oursos, whom she could not identify, and that he told her "See that she gets every attention she needs".
Mrs. L.A. Thomas testified that she is a neighbor of Mrs. Knight, renting an apartment from her, and she corroborates the testimony of the other witnesses with reference to the pain and suffering and disability sustained by Mrs. Knight.
The defendants' testimony on the question of liability consists of the testimony of Harold Ourso, the manager of the store, and of Mr. J. Roy Haase, the architect who built the store, and Mrs. Eloise Kirsch, an employee who witnessed the accident, and Mr. J.C. Werner, Jr., the official observer for the U.S. Weather Bureau.
Mr. Ourso testified that his store employed an average of 23 employees, and had a daily average of about 600 customers; that the first department built was the grocery department of the dimensions set forth hereinabove, and that some years later, in 1941, the dry goods department was added, also of the dimension set forth above; that the grocery department floor was a concrete floor and that the floor of the dry goods department, built 8 1/2 inches above the level of the grocery department floor, was of oak blocks; that these oak blocks were sanded when the floor was constructed, and thereafter polished and retained the original color, to-wit, an orange color; that consequently there was a marked contrast between the orange colored floor of the dry goods department and the gray concrete floor of the grocery department, which was very apparent to any one paying the slightest attention. Mr. Ourso testified further that at the entrance from the dry goods department to the grocery department there was located a sky light, the glass part of which measures 3', 10" east and west by 5', 10" north and south, and that the light from this sky light was thrown directly at the division, around the step, between the two departments; that besides this natural light, there was a large 200 bulb light at *Page 511 
the meat counter, slightly more than six feet from the step, and another large light on the northeast side in the dry goods department, also some six feet from the step, and lights in the office, which is located in the dry goods department and extending up to the step, and that these artificial lights also help to make the location of the step the best lighted part of the whole store. Mr. Ourso testifies that shortly before the accident he had been outside of the store and that it was not raining at that time, nor at the time of the accident. He stated that he had been one of the original members of the firm of Ourso Company and had been continuously in the store since its establishment and that during all these years only two other accidents had occurred at the step. He testifies that one of these accidents was caused by a woman backing into the step and that she at that time stated that it was caused solely by her negligence. The other accident in question is not explained, but he states that neither of the two prior accidents caused any injury. He testifies further that when he arrived in the store he saw Mrs. Knight sitting in a chair in the dry goods department and that he thereupon gave her some liniment and that she applied it on her bruised knee and that she did not then complain of any serious injuries, and that he accompanied her and Mrs. Radford to plaintiff's car and that, after a short conversation, Mrs. Knight, accompanied by Mrs. Radford, drove off; that thereafter he attempted to contact Mrs. Knight on at least four occasions, but was unable to do so. He admits having had a telephone conversation on one occasion with Mrs. James, daughter of Mrs. Knight, but denied having said anything to her which would indicate responsibility on the part of his store for the accident.
Mr. Haase, the architect, corroborates the testimony of Mr. Ourso with reference to the construction of the building, and he gives his expert opinion that the step in question is entirely safe in view of the sky light, the artificial lights, and in view of the contrasting colors between the floors of the two departments. It is admitted that there are no signs of any kind indicating the drop in the floor level, but as an expert he maintains that such signs are not necessary.
Mrs. Hirsch, the employee of Ourso Company, testified that when Mrs. Knight fell, she assisted her in walking to a chair some few feet away, in the dry goods department, and that she did not appear to be seriously injured.
Mr. Werner, the weather man, testified that there was rain falling on the day of the accident up to 9 a.m., as shown at his observation station, located some two miles from the scene of the accident. He states that from his observation this rainfall was general and that thereafter the weather was classified as "cloudy", but that this does not mean that the sun was not shining. In other words, that his records show that though the skies were cloudy, it was not overcast to the extent that the sun did not shine. He admits that he cannot say with certainty that there was not any local shower more than two miles away at the time this accident occurred.
Most of the testimony is medical testimony with reference to the condition of the plaintiff resulting from the accident. It is not necessary to consider that, due to our conclusion as to liability.
From a review of the testimony, it seems clear that Mrs. Knight on her first visit to this store, was attracted by the meat display and that her attention was focused entirely on this meat, which was hanging on hooks over the main counter, and that not knowing her surroundings, she proceeded, without paying any attention to the floor level, and as a result stumbled on the step or missed the step and thereupon fell. The question is can we, on these facts, convict Ourso Company of negligence, in view of the other facts with reference to the construction and lighting of the department store? The evidence preponderates to the effect that the floors of the two departments were of contrasting colors and that the division, including the step between the two departments, was well lighted, both by a sky light and by artificial lights. The fact remains, however, that there were no warning signs of any kind.
It is also shown that although 600 customers, on the average, entered the store *Page 512 
each day, six days a week, since 1941, only two other accidents occurred at the drop between the two floor levels, both of which were obviously minor accidents, and one of which was admitted by the customer to have been due to her negligence.
In the light of the above the trial judge concluded thus: "It is therefore my opinion that no negligence can be attributed to the proprietor of the store insured by the defendant." The trial judge, as a basis for his conclusion, cited and quoted extensively from the cases of Boyle v. Preketes, 1933,262 Mich. 629, 247 N.W. 763, and Benton v. United Bank Building Co., 1944, 223 N.C. 809, 28 S.E.2d 491.
[1] In the Boyle case, supra, the factual situation and the contentions therein are nearly identical with the present case. The Court said [262 Mich. 629, 247 N.W. 764]:
"If defendants' premises were properly lighted, they were not required to post warnings of the steps between the two portions of their place of business. If the place was sufficiently lighted, the steps themselves constituted as effective notice to defendants' customers as it was possible to give.
[2] "Touching plaintiffs' claim that her attention was distracted by the display of defendants' wares, it may be said that there was nothing unusual as to the manner or character of the display. We find nothing in this record which would justify the claim, at least made inferentially in behalf of appellant, that the display of the merchandise here kept for sale because of its attractive nature can be held to lessen the degree of care which plaintiff was required to exercise for her own safety. * * * It conclusively appears that the illumination was such that plaintiff could have seen the steps had she looked. There is no credible testimony that defendants were guilty of negligence in failing to properly light their place of business.
[3] " 'It has long since been recognized that failing downstairs, where the mishap was not imputed to unknown or concealed defects, belongs to that class of ordinary accidents which ought to be imputed to the carelessness or misfortune of the sufferer.' Davis v. Buss Machine Works, 169 Mich. 498, 500, 135 N.W. 303, 304. * * *
[4] "The following from the Garret Case, supra [Garret v. W. S. Butterfield Theatres, Inc., 261 Mich. 262, 246 N.W. 57], is quite applicable to the instant case: 'Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it. * * * The situation contained no element of a trap. A reasonably prudent person, watching where he is going, would have seen the step. Defendant is not under legal duty to prevent careless persons from hurting themselves. We think defendant was not guilty of negligence."'
[5-8] In the Benton case, supra, anent plaintiff's contention that there was no sign or warning of any kind to warn invitees of the sudden drop in the floor, the Court said [223 N.C. 809, 28 S.E.2d 493]: "Any danger incident to the difference in the levels of the two floors necessitating the step down being obvious to one who looked, there was no duty resting upon the defendants to give notice thereof. The law imposes no duty upon one to give notice of a dangerous condition to another who has eyes to see and an unobstructed view of such condition, but falls to take time to sec such danger. Generally, in the absence of some unusual condition, the employment of a step by the owner of a building because of a difference between levels is not a violation of any duty to invitees. Where a condition of premises is obvious to any ordinarily intelligent person, generally there is no duty on the part of the owner of the premises to warn of that condition. Sterns v. Highland Hotel Co., 307 Mass. 90, 29 N.E.2d 721. There is no duty resting on the defendant to warn the plaintiff of a dangerous condition provided the dangerous condition is obvious. Mulkern v. Eastern S. S Lines, 307 Mass. 609, 29 N.E.2d 919."
[9] We find these cases to be apposite to the case at bar and are decisive of the issues therein. These cases are in fine *Page 513 
with our jurisprudence holding that a storekeeper's obligation to his customers and invitees is to use ordinary care to keep the aisles, passageways and floors of his premises in a reasonably safe condition. Hays v. Maison Blanche Company, La. App., 30 So.2d 225, and the cases therein cited.
Finding no error committed by the trial court, the judgment appealed from is affirmed. *Page 613