## J. C. PENNEY CO. v. MAYES.

Court of Appeals of Kentucky.
Dec. 5, 1952.

Rehearing Denied March 27, 1953.

Smith & Blackburn, Ben D. Smith and Viley O. Blackburn, Somerset, and Robert J. Watson, Middlesboro, for appellant.

Lay & Knuckles, W. R. Lay, and Grant Knuckles, Pineville, Van Sant & Young, Frankfort, for appellee.

STEWART, Justice.

Plaintiff below and appellee here, Maggie Mayes, brought this action against J. C. Penney Company, a corporation, hereinafter referred to as "the company", to recover damages suffered by her when she fell in the vestibule of the company's store in Mid-dlesboro on August 18, 1951. Plaintiff sustained serious injuries of a permanent nature. The jury returned a verdict for her against the company for $30,400, and this appeal is from the judgment entered thereon.

The J. C. Penney Company has for many years operated a store in Middlesboro, located on the corner of two busy streets. The sidewalk along both sides of the building had just been rebuilt by the company's contractor, W. A. Billingsly, with the result that the floor of the vestibule was at the time of the accident 3½ or 4 inches lower than the level of the new sidewalk. The vestibule, where appellee was hurt, opened on Cumberland Avenue; it has a passageway 15 feet wide between show windows, and the door leading into the store is 13 feet 6 inches distant from the inside curb of the sidewalk. By the great preponderance of the testimony introduced it was shown that the vestibule floor was covered with old red tile, and the surface was smooth, level and free of imperfections on the occasion that appellee fell on it. Hereinafter we shall discuss the evidence of one witness who appellee argues testified to the contrary.

On the day of the accident, which occurred around 4:15 p. m., appellee approached the entrance of the company's store with the intention of making some purchases. The sun was shining, the vestibule was well-lighted and there were no people crowding this passageway. She stated she knew the sidewalk had been rebuilt, since she passed by the store almost every day, but she said she was unaware of the fact that the sidewalk had been reconstructed on a higher level than the tile floor. According to her, there were no signs in front of the building to warn the public to this effect. She stated that she had traded with the company many years, that she would visit the store every two or three weeks, and that she would ordinarily use the Cumberland Avenue entrance. Immediately before she stepped off the sidewalk, she admitted her attention was attracted to a man and a boy who were redecorating a show window of the company's store on her left as she drew near the build-

ing. The boy had at that instant dropped something and he was in the act of picking it up. It was while watching him, she testified, that she stepped into what she described as a "hole", lost her balance and fell, fracturing her left hip and her pelvic region. On cross-examination she was asked if there had been anything to keep her from seeing the step-down had she been observing her footing and she replied: "No, if I had been looking down at my feet, but I didn't think about that (the step-down) being there. If I had I would have been looking at it and watching it." This question was put to her on cross-examination: "Do you mean there was a hole or the tile floor was a different level than the sidewalk?" Her answer was: "It was a different level."

At the outset, the company insists it was entitled to a directed verdict at the conclusion of all the evidence because (a) there was no proof of any negligence upon its part in connection with the accident and because (b) appellee was guilty of contributory negligence as a matter of law. We believe there is merit in both of these contentions, and we shall give them our first consideration.

Generally speaking, a store owner is under a duty to use reasonable care to keep his premises in a safe condition. Bridgford v. Stewart Dry Goods Co., 191 Ky. 557, 231 S.W. 22. It is also well settled that a customer, upon entering a store, must make a reasonable use of his own faculties to observe and avoid dangers upon the premises. Price v. T. P. Taylor & Co., Inc., 302 Ky. 736, 196 S.W.2d 312.

It has been uniformly held that merely because a step-up or a step-down, or a flight of steps up and down, is maintained at the entrance to a store building, this in itself is no evidence of negligence, if the step or steps are in good condition and in plain view. We have found no Kentucky decision wherein this rule of law has been applied, but other jurisdictions have followed it unswervingly. In Mehr v. G. C. Murphy Co., D.C.Ohio, 60 F.Supp. 847, 848, a customer on leaving a store walked through a door into a vestibule and, failing to see a step-up of 5 inches at the sidewalk, fell and sustained injuries. In deciding that an accident growing out of these recited facts would not impose liability on the store owner, the court laid down these principles which we believe are in every respect pertinent to the case at bar, Lederle, District Judge, who wrote the opinion, saying: "* * * I am forced to find that the vestibule and step-up were plainly visible and such that a reasonably prudent person would be likely to expect or see the step, that the vestibule and step-up were sufficiently well lighted at the time in question so that a person exercising reasonable observation and care for his own safety could have and should have seen the step and safely walked upon it, and that the step was in no way a trap or hidden danger of which the defendant was required to give special warning. The vestibule and step-up were in a reasonably safe condition, and plaintiff failed to sustain her charges of negligence." See also Watkins v. Piggly Wiggly Bird Co., 8 Cir., 31 F.2d 889; Berquist v. F. W. Woolworth Co., 91 N.H. 428, 21 A.2d 169, 726; Kern v. Great Atlantic & P. Tea Co., 209 App.Div. 133, 204 N.Y.S. 402. It has also been held that where a step-down or step-up is obvious the store owner is relieved from the duty of giving any warning. Benton v. United Bank Bldg., Co., 223 N.C. 809, 28 S.E. 2d 491.

It is a matter of common observation that the entrance to or exit from buildings employed for every conceivable purpose often adjoin surfaces that are frequently at different levels as compared with these buildings, so that this variance has to be overcome by one or more steps of greater or less height, and property owners have a right to construct their buildings in this manner in reliance on this common observation and assume that those who may frequent their buildings will exercise ordinary circumspection as to their footing. Hoyt v. Woodbury, 200 Mass. 343, 86 N.E. 772, 22 L.R.A.,N.S., 730; Sterns v. Highland Hotel Co., 307 Mass. 90, 29 N.E.2d 721.

Counsel for appellee argue at length, however, that appellee stepped into

a "hole" in the vestibule and that this fact was the actual cause of her fall. This assertion is based upon appellee's testimony and that of John Dixon, a police officer. It is true appellee did remark at the beginning of her testimony that she stepped in a hole, but, on cross-examination, as we have shown, she corrected herself by stating that where she stepped was "a different level" from the sidewalk. John Dixon, who was called to the scene of the accident to investigate it, when testifying as a witness for appellee, was asked by one of appellee's counsel if he had noticed "any difference in the height of the concrete at the entrance and the tile leading into the store." He replied: "I guess it (the vestibule) was six inches deep." On cross-examination he said the vestibule "looked like it had been dug out." An appraisal of Dixon's evidence as a whole leads one to the belief that the idea he attempted to convey was that the vestibule was below street level. Every other witness, four who appeared in behalf of the company and two who testified for appellee, including appellee herself, stated positively that the vestibule had a smooth surface of tile. Therefore, we are convinced the overwhelming weight of the evidence in this case is to the effect that the vestibule and the step-down were in a reasonably safe condition and they were in plain view, so that they might not be regarded as in themselves a hazard to anyone entering or leaving the store. Appellee belabors this point by insisting that the vestibule was in an unfinished condition, but this mere statement does not do away with the proven facts in this case.

■ Two other assertions are advanced by appellee as contentions that the company considered the vestibule in the condition it was in when appellee fell on it to be dangerous for public use. One is a claim that the entrance to the vestibule was barricaded on the day of the accident until 2:00 p. m., and then the door was opened and the obstructions removed without the knowledge or consent of the manager of the company because certain employees wanted to let air in the store from this end of the building; and the other is a claim that the contractor had laid planks on the floor of another vestibule opening on another street to compensate for the difference in the level of the sidewalk and the vestibule. It is argued that, because the company resorted to these two measures, it knew the vestibule was unsafe and it should have warned the public accordingly. As to the first contention, the proof does not show that the vestibule was barricaded, but, on the contrary, it was made clear that only the sidewalk in front of the vestibule was fenced off until the new concrete with which it had been constructed could harden sufficiently for pedestrians to travel over it. These facts do not afford a basis for maintaining that the company believed the vestibule was a hazard. As to the next contention, it is true boards were laid from the top of the new concrete walk to the door at the other entrance. It is not set forth in the evidence why this was done, and we are unable to infer from such an unrelated and unexplained set of facts that, because the same procedure was not followed at the Cumberland Avenue vestibule, the company was guilty of a negligent act. Moreover, we think this character of proof was incompetent.

■ Under the circumstances of this case we are unable to conclude that a step-down, constructed at the entrance of the company's store, is indicative of negligence, especially where the proof is conclusive, as we think it was here, that the step-down and the vestibule were in good repair and in plain view and that appellee, in the exercise of reasonable observation, could have seen the step-down and the vestibule and walked upon them with safety.

Was appellee guilty of contributory negligence as a matter of law? We believe she was.

■ ■ Bush v. Grant, 61 S.W. 363, 364, 22 Ky.Law Rep. 1766, seems to us to lay down the test by which to determine whether appellee in the instant case was guilty of contributory negligence as a matter of law. It states: "Ordinarily, the question whether the injury was caused solely by the defendant's negligence, or was contrib-

uted to by plaintiff, should be left to the jury, but where there is no conflict of evidence as to the manner of the injury, and when the facts show unmistakably that the injury resulted from an act of the plaintiff, which in law is in itself negligence, the court should not submit the question to the jury." See also Neal v. Ashland-Ironton Transfer and Ferry Co., 201 Ky. 332, 256 S.W. 721.

 An invitee's right to assume that premises which he has been invited to use are reasonably safe does not relieve him of the duty to exercise ordinary care for his own safety nor license him to walk blindly into dangers which are obvious, known to him, or that would be anticipated by one of ordinary prudence. Lachat v. Lutz, 94 Ky. 287, 22 S.W. 218, 15 Ky.Law Rep. 75, and Lyle v. Megerle, 270 Ky. 227, 109 S.W.2d 598.

 Appellee testified that she walked toward the step-down in broad daylight and that her eyes were riveted on a boy who was picking up something in a show window at the time she fell. She confessed she could have seen the step if she had been looking down at the time. It appears that appellee's accident resulted from her own conceded negligence; therefore, the company is not legally responsible for injuries she brought upon herself by her lack of ordinary care for her safety. There is no justification for her failure to watch her step because her gaze was irresistibly drawn to movements in the show window, as counsel seem to imply in their brief. To uphold this theory would make the company liable as an insurer and not because of negligence. Cates v. Evans, Mo.App., 142 S.W.2d 654.

In view of the conclusion we have reached it becomes unnecessary to pass upon the other grounds for reversal urged by appellant.

Wherefore, the judgment is reversed with directions that it be set aside and that another be entered dismissing appellee's case, if the evidence be substantially the same at another trial.