ELIZABETH B. REESE v. PIEDMONT, INC.

(Filed 4 June, 1954.)

**1. Negligence § 4f—**

> The owner of a building renting a floor thereof to a private hospital is under duty to exercise ordinary care to keep the restroom on the floor in a reasonably safe condition for the use of the doctors' patients, and to warn them of hidden perils or unsafe conditions in entering or leaving the restroom which are known to the lessor or ascertainable by it by reasonable

inspection and supervision, but the lessor is not an insurer of the safety of such patients, and the mere fact that a patient falls in the restroom to her injury raises no inference of negligence.

**2. Same—**

The owner of a building is under no duty to warn invitees of a danger which is obvious to any person of ordinary intelligence using his faculties in an ordinary manner.

**3. Same—**

The construction of a floor in a restroom on two levels, with a step from one level to the other, is not negligence unless, because of the character, location, or surrounding conditions, a reasonably prudent person would not be likely to expect the step or see it.

**4. Same—Evidence held insufficient to show negligence on part of lessor in maintenance of restroom.**

The evidence considered in the light most favorable to the plaintiff tended to show that she was a patient of a private hospital which rented a floor of the building from defendant, that the restroom maintained on the floor was about 14 feet long, that three feet and eight inches from the entrance door there was a step seven and three-quarter inches high to the back of the room where the toilets were located, that there was a rubber mat on the lower level extending from about two inches in front of the step-up to about four inches from the entrance door, that at the back there was a small window with translucent glass, that there was a light burning in the rear of the room but that the bulb in the fixture over the step was not burning, and no bulb was in the fixture on the right wall near the washbasin, and that plaintiff was helped to the toilet by a nurse, but in returning to the door some 10 or 15 minutes later, failed to see the step-down and fell to her injury. *Held:* Defendant's motion to nonsuit was properly allowed, since defendant was not under legal duty to prevent persons inattentive to their own safety from hurting themselves, and the evidence discloses that plaintiff must have become aware of the step on her trip to the toilet, and that there was enough light to which plaintiff's eyes must have become adjusted for her to have seen the step-down had she exercised due care for her own safety.

**5. Appeal and Error § 39e—**

Where it is determined on motion to nonsuit that the plaintiff's evidence, taken as true, is insufficient to be submitted to the jury, the exclusion of corroborative evidence cannot be prejudicial.

**6. Same—**

Where it is determined that the light burning in lessor's rest room at the time of the injury was sufficient for plaintiff invitee to have seen the step-down had she looked, the exclusion of evidence bearing on the regularity of inspection and maintenance of other lights in the restroom cannot be prejudicial.

**7. Same—**

Since the maintenance of a rest room with two floor levels and a step between the levels is not negligence unless the location and conditions are such that a reasonably prudent person would not be likely to expect a step

or see it, where the evidence discloses that there was sufficient light in the rest room to have enabled the plaintiff to see the step-down had she looked, the evidence does not disclose that the rest room presented a dangerous condition, and therefore evidence tending to show that lessor had knowledge of the condition of the rest room prior to the injury is properly excluded.

APPEAL by plaintiff from *Sharp, Special Judge,* September Civil Term 1953 of GUILFORD—Greensboro Division.

Civil action for damages for personal injuries sustained in a fall in a ladies' rest room in a building owned and operated by defendant.

The plaintiff's evidence tends to show the following facts: About 9:30 a. m. on 26 September 1951 the plaintiff, Mrs. Elizabeth B. Reese, for the purpose of having X-ray pictures made, went to the offices of Dr. E. T. Walker on the second floor of a building owned and operated by the defendant, Piedmont, Inc. The building has four stories; on the first floor are a drug store, barber shop, stairway and elevators; the second floor is devoted to office space, and the two upper stories are used by a private hospital. The plaintiff is a 50 year old woman. She was accompanied by Mrs. Frank Gartland. The plaintiff put on an examining gown, and was given a barium enema. After the X-ray picture was made, Dr. Walker told her to go to the ladies' rest room across the hall to evacuate the enema, and to return to his office for an X-ray picture after the evacuation.

This rest room is maintained by the defendant for the use of the second floor tenants of the defendant and their patients. The rest room is about 6 feet, 3 inches wide, and about 14 feet, 2 inches long. The floor of this rest room is on two different levels. 3 feet, 8 inches from the entrance door into the room is a step 7¾ inches high to a higher floor level, which extends 10 feet, 6 inches to the back of the room. There is a wash basin on the right-hand wall on the higher level, and there are two toilets, enclosed in stalls, on the higher level at the back of the room. To the right over the right-hand toilet is a window approximately 12½ inches wide by 54 inches high, with a dark ripple glass, non-transparent. A portion of the building obstructs the light coming in the window. Both floor levels are covered with black and white tile. The walls of this room have white rectangular tiling. There was a black rubber mat on the floor on the lower level of the room about 2 inches in front of the step-up, and about 4 inches from the entrance to the room. This mat covered most of the area of the lower level. Plaintiff noticed this mat when she went in the rest room. The riser of the step is marble.

There were three light fixtures in the rest room—one overhead at the rear of the room above the toilet stalls, one overhead above the step, and one on the right wall near the wash basin. During the time plaintiff was

in the rest room, the light in the rear of the room was burning; the fixture over the step contained a bulb, but it was not burning, and the fixture on the side wall had no light bulb. The room was dimly lighted by the window and the burning light in the rear.

Plaintiff opened the door and went into this rest room. She had not been in it before. She testified: "When I went into this room, I did not observe that the floor of the rest room was on two different levels. I evidently must have stepped up after entering the rest room to get to the higher level, but I did it unconsciously, and went to the toilet. . . . At the time that I went into this rest room and proceeded to the toilet, I did not notice the height of the step on the higher level, and I did not notice how far the distance of the step was from the door."

After staying in a toilet stall 10 or 15 minutes plaintiff prepared to leave. She was neither dizzy nor nauseated. She opened the toilet door, and looking straight ahead at the door to the rest room she started walking to leave the room. The floor looked to her like it was on the same level. There was no sign in the room telling of the step-down. Plaintiff testified: "I was looking straight at the door as I was walking out. As I started to walk towards the exit door to go out of this rest room, naturally, I glanced at the door and looked straight at the door. I looked down and I looked at the door, and was walking towards the door, and the light was so poor that I couldn't see very well, and I walked off and fell. I did not observe any change in the level of the floor as I was leaving. It all looked the same." In the fall plaintiff's hip was broken, and she suffered other injuries.

No wax, water, oil, trash or debris were on the floor. A dull light came through the window. On cross-examination plaintiff said: "I didn't see any defect in the floor of any kind. I didn't see any holes. I didn't see anything wrong with the top of that riser."

Plaintiff's husband was notified of his wife's fall, and went to Dr. Walker's office. While there he went in the rest room. On cross-examination he testified: "The glass in that window appeared to be this kind of glass that is translucent that is used in bathroom windows very frequently, yes sir. It appeared to be ordinary rest room window glass. It may have been painted. I am not positive. It appeared to be sort of glazed glass. In other words, you couldn't see through it. It was kind of designed to let light through, but not be able to see through."

Mrs. Frank Gartland entered the rest room immediately before the plaintiff did. Her testimony tended to show that conditions in the rest room were as described by plaintiff. After using the toilet she started out, and at the step-down "walked off into space" and fell.

The day plaintiff fell was a bright, sunny day.

We deem it unnecessary to state the defendant's evidence.

From judgment of nonsuit entered at the close of all the evidence, the plaintiff appeals, assigning error.

*Falk, Carruthers & Roth for Plaintiff, Appellant.*
*Jordan & Wright and Perry C. Henson for Defendant, Appellee.*

PARKER, J.  The mere fact that plaintiff fell and suffered injuries in leaving the rest room when she stepped from the higher to the lower level of the floor of the rest room raises no inference of negligence against the defendant. *Fanelty v. Jewelers,* 230 N.C. 694, 55 S.E. 2d 493; *Harris v. Montgomery Ward & Co.,* 230 N.C. 485, 53 S.E. 2d 536; *Fox v. Tea Co.,* 209 N.C. 115, 182 S.E. 662; *Parker v. Tea Co.,* 201 N.C. 691, 161 S.E. 209; *Bowden v. Kress,* 198 N.C. 559, 152 S.E. 625.

The defendant was not an insurer of her safety while using the rest room. *Barnes v. Hotel Corp.,* 229 N.C. 730, 51 S.E. 2d 180; *Bowden v. Kress, supra; Bohannon v. Stores Co.,* 197 N.C. 755, 150 S.E. 356.

It was the legal duty of the defendant to exercise ordinary care to keep the rest room in a reasonably safe condition for the use of the doctors' patients entering or leaving the rest room, and to warn them of hidden perils or unsafe conditions in entering or leaving, known to it, or ascertainable by it through reasonable inspection and supervision. *Fanelty v. Jewelers, supra; Drumwright v. Theatres, Inc.,* 228 N.C. 325, 45 S.E. 2d 379.

We said in *Benton v. Building Co.,* 223 N.C. 809, 28 S.E. 2d 491: "Any danger incident to the difference in the levels of the two floors necessitating the step down being obvious to one who looked, there was no duty resting upon the defendants to give notice thereof. The law imposes no duty upon one to give notice of a dangerous condition to another who has eyes to see and an unobstructed view of such condition, but fails to take time to see such danger. Generally, in the absence of some unusual condition, the employment of a step by the owner of a building because of a difference between levels is not a violation of any duty to invitees. Where a condition of premises is obvious to any ordinarily intelligent person, generally there is no duty on the part of the owner of the premises to warn of that condition. *Sterns v. Highland Hotel Co.,* 307 Mass., 90, 29 N.E. 2d 721. There is no duty resting on the defendant to warn the plaintiff of a dangerous condition provided the dangerous condition is obvious. *Mulkern v. Eastern S. S. Lines,* 307 Mass., 609, 29 N.E. (2d), 919."

"Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location or surrounding conditions, a reasonably prudent person

would not be likely to expect a step or see it." *Garret v. W. S. Butterfield Theatres, Inc.,* 261 Mich. 262, 246 N.W. 57. To the same effect see *Boyle v. Preketes,* 262 Mich., 629, 247 N.W. 763; *Dickson v. Emporium Mercantile Co., Inc.,* 193 Minn. 629, 259 N.W. 375; *Cleary v. Meyer Bros.,* 114 N. J. Law 120, 176 A. 187; *Haddon v. Snellenburg,* 293 Pa. 333, 143 A. 8; *Matson v. Tip Top Grocery Co.,* 151 Fla. 247, 9 So. 2d 366.

Plaintiff's counsel candidly state in their brief: "This Court has frequently held that the mere existence of a step in a public place is not evidence of negligence." However, plaintiff contends the real significance of her case lies in the conjunction of all the facts and circumstances tending to show negligence on defendant's part. Plaintiff argues: (1) The step down was unexpected; (2) the floor and walls on both levels were uniformly of the same color and materials; (3) the rubber mat did not cover the entire lower level, and did not indicate a step; (4) the upright part of the marble rising of the step did not connote a step; (5) there were no warning signs; (6) the room was inadequately lighted.

The plaintiff contends uniformity in colors and materials on two different levels has a camouflaging effect, and cites in support of her position *Mulford v. Hotel Co.,* 213 N.C. 603, 197 S.E. 169; *Touhy v. Owl Drug Co.* (Cal.), 44 P. 2d 405 and *Crouse v. Stacy-Trent Co.* (N.J.), 164 A. 294.

The facts in the *Mulford case* are completely different. The plaintiff came out of a brilliantly lighted room into a dimly lighted basement. In that case the defendant's negligence was admitted. Here it is denied. In reference to plaintiff's contention, *Seawell, J.,* in the opinion said in substance, flat surfaces, under lighting conditions, may present an appearance of continuity.

The *Touhy case* was decided by a district court of appeals. In the *Touhy case* and in the *Crouse case* there was uniformity of materials and colors on the different floor levels. In the instant case plaintiff's evidence shows there was a large black rubber mat covering most of the floor of the lower level, and there was black and white tiling on the upper level. Uniformity of colors was not present as in the *Touhy* and *Crouse cases.*

There were three light fixtures in the room and a window at the back. Plaintiff fell in the morning. According to her evidence it was a bright, sunny day and some daylight came through the window. The light over the toilet stalls was burning. The light over the step was not, though there was a light bulb in the socket. There is no evidence as to whether this light was turned on or off, or whether it had burned out. If it had burned out, there is no evidence, as to when it did, other than the testimony of Mrs. Gartland that she was in the rest room immediately before plaintiff fell, and this light was not burning. The light fixture on the wall near the wash basin had no light bulb, but there is no evidence as to

how long this condition existed. Plaintiff's evidence shows the rest room was for the use of the doctors on the second floor and their patients. It is common knowledge that light bulbs burn out unexpectedly and frequently. There is no evidence that defendant caused the fixture near the wash basin to have no light bulb, or the condition that the light bulb over the step was not lighted. Upon plaintiff's evidence the defendant cannot be charged with express or implied notice of such condition. *Pratt v. Tea Co.,* 218 N.C. 732, 12 S.E. 2d 242; *Revis v. Orr,* 234 N.C. 158, 66 S.E. 2d 652.

Plaintiff entered the rest room in the morning. No wax, water, oil, trash or debris were on the floor. There were no defects in the top of the step or in the floor. On the lower floor level was a large black rubber mat covering a large part of the area, about 4 inches from the entrance and extending to within about 2 inches of the step. The riser was of marble. The upper level had black and white tiling. 3 feet, 8 inches from the entrance door was a step 7¾ inches high. The conclusion is unescapable that she was aware of the step, and stepped up to the higher floor level, for if she had not, she would have fallen or stumbled over the step going in. The step was obvious. She had eyes to see. Her safe passage from the entrance of the rest room to the toilet is an indubitable fact. In leaving she testified she looked down, and the light was so poor she couldn't see very well, and did not observe any change in the floor level. She looked at the door, walked on, and fell at the step-down to the lower level. The situation contained no element of a trap or hidden peril. Plaintiff had been in this dimly lighted, as she contends, rest room for 10 or 15 minutes. Her eyes had been adjusted to the light there. The facts speak louder than the words of the witness that there was enough light for her to see the step-down, if she had looked, for there was light enough for her to see and step up 7¾ inches to the higher floor level in entering. The defendant is not under a legal duty to prevent persons inattentive to their safety from hurting themselves. Considering the evidence most favorably for the plaintiff, we think the defendant was not negligent on the evidence before us. This does not conflict with *Drumwright v. Theatres, Inc., supra,* relied upon by plaintiff, because in that case the Court said: "There were no floor lights or seat lights in the aisle or on the steps. At least none were lighted."

The fact that Dr. Walker's nurse testified for the defendant that she assisted plaintiff into the rest room and back to the toilet, holding her by the arm does not change our opinion. Plaintiff contends that if the nurse's testimony is more favorable to the plaintiff, (even though it is in flat contradiction to hers) it must be accepted on the motion for nonsuit. We do not consider the nurse's testimony more favorable to plaintiff on the question of defendant's negligence, for even according to that testi-

mony plaintiff must have known of the 7¾ step-up to the higher floor level, as she did not stumble or fall over it.

The plaintiff contends that the trial court erred in excluding evidence that the condition of the lighting in the ladies' rest room existed for two days after plaintiff fell in the same condition as the day she fell, and that four days after plaintiff fell the light over the step was burning. The plaintiff contends that (1) it corroborates her testimony, (2) has a definite bearing on the regularity of inspection, and (3) on the assiduity of maintenance.

The exclusion of this evidence in so far as it corroborates plaintiff's testimony was harmless, for on a motion for nonsuit we accept the plaintiff's evidence as true.

Plaintiff has cited no authority for her contention that the excluded evidence has a definite bearing on the regularity of inspection and the assiduity of maintenance. It is unnecessary for us to pass upon this question, for we deem the exclusion of this evidence harmless in this case, because there was light enough from the light burning and the window for plaintiff not to fall or stumble over the step when she entered, and went to the toilet.

Plaintiff contends that the trial court erred in excluding the testimony of H. C. Umfleet that in 1948 and 1949 he was maintenance manager in the Piedmont Hospital or Piedmont Building; that he was employed by J. J. Jones, who was building manager; that the condition of the rest room the day plaintiff fell was the same as in 1948 and 1949, except that all three lights in the room in those years were burning; and that while Umfleet worked there he recommended to Jones that a sign be placed on the inside of the room to warn people there was a step-down when leaving, because he recognized it was dangerous, and it was very easy for someone to fall and get hurt. Afterwards Jones told him his recommendation was being considered, but no sign, as he recommended, was placed. Umfleet testified Jones worked for the Board of Directors of the hospital, and so far as he knew the Board of Directors for the hospital was the same as the Board of Directors for the whole building, but he might be wrong.

Plaintiff's counsel in their brief state: "This testimony is admittedly not competent to prove that the rest room presented a dangerous condition; but it is certainly competent to prove that if the rest room presented a dangerous condition, the defendant had notice of this fact."

It is very doubtful if plaintiff's evidence tends to show that Jones was an employee of the defendant. Conceding, but not deciding, that he was, we think that the rest room did not present a dangerous condition. *Benton v. Building Co., supra; Garret v. W. S. Butterfield Theatres, Inc., supra.* Therefore, it would appear from statement in brief of plaintiff's

counsel quoted above, the evidence was properly excluded. The cases relied upon by plaintiff are distinguishable.

The judgment of nonsuit is correct.

Affirmed.