This is a petitory action. Plaintiff claims a strip of land in the Parish of St. Martin, in and near the corporate limits of the Town of St. Martinville, having a front of approximately 155 feet on the paved highway leading from St. Martinville to Parks, by a depth between irregular lines up to the Southern Pacific Railroad right of way, the rear line thereof measuring approximately 134 feet. Plaintiff alleges that the said tract of land is bounded north by the center line of the Sproule Canal, also known as the Government Canal, on the east by the said highway, on the south by property of defendant and other property of plaintiff and on the west by said Southern Pacific Railroad right of way.
In order to facilitate the description of the property and a proper understanding of the issues of this case, the following sketch is appropriate, the property being subdivided into three portions, namely, A. B. and C.
 *Page 876 
The plaintiff bases his claim to the entire tract on the record title, which record title he sets forth in his petition. In addition thereto and in aid thereof, he also pleaded the prescription of ten years acquirendi causa.
In his answer, the defendant disclaimed any title to the western portion "C". He claims the eastern portions "B" and "A", by record title. "B" plus "A" is a strip measuring 155 feet front on the highway by a depth of about two arpents. Broken up, "B" measures 98 feet front, and "A" is approximately 57 feet front. Further pleading, defendant denies that the plaintiff has a record title to the property. Pleading in the alternative, he avers that by virtue of his deed of acquisition in 1919, and his possession thereunder, he should be decreed to be the owner of the front strip up to the south line of the bank of the canal under the prescription of ten years acquirendi causa. He further pleads the prescription, acquirendi causa, of thirty years as to portion "B".
After trial, the lower court, for written reasons assigned, held that the plaintiff had made out his title to the whole of the property. But he maintained defendant's plea of prescription of ten years to portion "B", overruled the plea as to portion "A", thus awarding portion "B" to defendant and portion "A" to plaintiff, portion "C" having passed out of the case by defendant's disclaimer.
Plaintiff appealed. In this court defendant answered plaintiff's appeal, contending that the trial judge erred in holding that plaintiff had proven his title to the two portions in contest, in failing to maintain the plea of prescription of ten years in its entirety and in failing to pass on the plea of prescription of thirty years. He also filed a plea of prescription of ten years based on his deed executed in 1919 and covering the entire strip in controversy up to the center of the canal.
Both plaintiff and defendant deraign their title to a common author, Jacob H. Sterken. In 1886, Sterken owned a large tract of land, including the property involved, described as follows: "First: A tract of land, situated lying and being in the Parish of St. Martin, in this State, at about two miles from the Town of St. Martinville, near the right bank of Bayou Teche and formerly belonging to the Heirs of Fontenette, the said tract of land is composed of two parcels one of which having Six arpents front on the Public Road bordering the rear line of the property of S.V. Martin by a depth of Thirty three arpents, and the other having a front of Six arpents on Bayou Teche by a depth of Forty arpents, which said two parcels of land are bounded North by the plantation formerly belonging to Charles Olivier Duclogel, and hereinafter described and South by lands now or formerly belonging to C.M. Olivier. Together with all the buildings and improvements on the said lands, and all the rights, ways, privileges and servitudes thereunto belonging or in anywise appertaining."
On January 15, 1888, Sterken sold to George Lovas a tract of land described as follows: "A certain tract of land situated in the Parish of St. Martin, measuring one arpent front on the public road leading from St. Martinville to Breaux Bridge next to Bayou Teche, by two arpents in depth, bounded on the north by the embankment of the canal, known as the Sproulis Canal, east by the said public road leading from St. Martinville to Breaux Bridge and south and west by the lands of the vendor."
Thereafter, on May 17, 1888, Sterken sold to Frank M. Welch the following described property: A certain tract of land, situated in the Parish of St. Martin, near the Town of St. Martinville, containing seven hundred and twenty arpents and ten hundredths of an arpent, designated included within the letters A, B, C, D, E, H, G, F, as per plat of survey made by S.V. Martin, Surveyor, dated May 15th, A. D., 1888, and hereto annexed for reference; which said tract is bounded North by land of Miss Laperle Bienvenu, South by a lane separating the same from the land of widow C.M. Olivier others, East by public road leading from St. Martinville to Breaux Bridge and West by public road laid out at forty arpents from the Bayou Teche. There is a certain small *Page 877 
tract of two superficial arpents, designated included, as per aforesaid plat, within the letters E, H. G. F, which has already been sold by present vendor to Mr. George Lovas and is, therefore not comprised in the present sale; together with the land presently sold all buildings, improvements, fences, etc. thereon being and thereto appertaining, excepting however the sugar mill and bricks of the old sugar house, which are not sold by these presents. The above described land forms a part of a larger tract of land purchased by present vendor from Mr. John Langles, per act passed before Charles G. Andry, a Notary Public of the City of New Orleans, dated December 18th, A. D. 1886, and duly recorded in the Recorder's Office of this Parish, in Book of Conveyances No. 43, folios, 12, 13, 14 15 and under No 18801."
The plat referred to being as follows:
[EDITORS' NOTE: MAP IS ELECTRONICALLY NON-TRANSFERRABLE.]
The plaintiff claims, through mesne conveyances, the property in contest as being a part of the property acquired by Welch and lying immediately south of the canal.
[1, 2] The settled jurisprudence of this State is that a plaintiff in a petitory action, in order to recover, must rely on the strength of his own title and not on the weakness of that of his opponent. In order to maintain his suit, he bears the burden of proving title in himself. The title of the defendant is not at issue until plaintiff has proved an apparently valid title in himself. From this rule it follows necessarily that, when he claims title to a certain described tract or portion of land or lot of ground, he must show that his title covers the identical lot in controversy.
[3] It is the contention of defendant that since the plat attached to the Welch deed locates the Lovas property as being *Page 878 
immediately south and along the canal, that Sterken did not convey to Welch any property between Lovas' property and the center of the canal, thus causing a missing link in plaintiff's chain of title. In examining the plat, we observe that it is not a plat as generally made by a surveyor, in that there are no dimensions given nor are the dimensions of the canal shown on the map, nor any embankment with dimensions given, as referred to in the Lovas deed. Yet the Lovas deed specifically calls for an embankment abutting the canal. The deed specifically states that the plat of survey is annexed for reference, therefore not constituting a part of the deed. The description of the property then controls. Evidence was admissible to show the exact location of the Lovas property.
[4] On March 12, 1890, Welch sold the property under the same description as he acquired it to Stanislaus Dabadie. On April 7, 1890, Stanislaus Dabadie then sold the portion of the land lying south of the center of the canal, the eastern 80 arpent portion thereof to Mrs. Hanna Newmaster, wife of John Henry Stecker, and the remaining western portion to John Henry Stecker. To the latter sale, there is a plat of survey, with measurements, showing the property transferred, and the location of the Lovas property. On this plat, there is shown a strip of land lying between the center of the canal and the northern boundary of the Lovas property. We feel therefore that since this plat contains measurements and was an actual survey, it has greater weight than the one annexed to the Welch act of acquisition.
Plaintiff deraigns his title to the vendees of Mrs. Hanna Newmaster Stecker.
[5] Suffice it to say that the lower court was of the opinion that the plaintiff had borne the burden of proof and after a thorough review of the several sales and the annexed plats, we see no reversible error.
Having come to the conclusion that plaintiff has proven a record title to the disputed portions "B and A", the remaining discussion will be on the question of prescription.
George Lovas having died, on December 23, 1919, his heirs conveyed to the defendant the following described property: "That certain lot of ground situated in the corporate limits of the Town of St. Martinville, Saint Martin Parish, State of Louisiana, and measuring one (1) arpent front on the Road or continuation of Lewis Street and bounded North by the Government Canal; South by lands of Mrs. Sillan formerly; East by said Lewis Street and West by land of Mrs. Sillan formally. See Book 43 folio 476 No. 19267 of Conveyances. Vendors own the said property as per judgment rendered in the Estate of George Lovas, certified copy of which judgment is recorded in Book 85 folio 74 under No. 41553 of Conveyances of St. Martin Parish, Louisiana." Note: Reference to Book 43, folio 476, No. 19267, is the recordation of the deed of Sterken to George Lovas and the reference to the recordation of the judgment shows that the property therein described is the same as acquired by George Lovas.
In order to acquire property by the prescription of ten years, four conditions must concur: "1. Good faith on the part of the possessor. 2. A title which shall be legal, and sufficient to transfer the property. 3. Possession during the time required by law, which possession must be accompanied by the incidents hereinafter required. 4. And finally an object which may be acquired by prescription." Civil Code, Article 3479.
Good faith possessor is defined as "He who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." Revised Civil Code, Article 3451.
"He is a bona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of. He ceases to be a bona fide possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner." Civil Code, Article 503. *Page 879 
"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." Civil Code, Article 3481.
"It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription." Civil Code, Article 3482.
"To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title." Civil Code, Article 3483.
The term just title, in the cases of prescription, is "a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property." Civil Code, Article 3484.
"And in this case, by the phrase transfer of the ownership of the property, we understand not such a title, as shall have really transferred the ownership of the property, but a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners, such as a sale, exchange, legacy or donation." Civil Code, Article 3485.
"To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents: 1. That the possessor shall have held the thing in fact and in right, as owner * * *. 2. That the possession have been continuous and uninterrupted, peaceable, public and unequivocal * * *." Civil Code, Article 3487.
As to the conditions required under Civil Code, Article 3479, supra, it certainly can be said that the object in dispute is subject to acquisition by prescription and that the title of defendant, his deed of acquisition from the heirs of George Lovas, is legal and sufficient to transfer the property. We are only concerned with conditions 1 3 of the said article. With reference-thereto, we find the following facts as sufficiently established.
[6] The testimony introduced by plaintiff is to the effect that the Lovas tract was a tract measuring 1 arpent on the highway by a depth of 2 arpents, which 2 arpents tract was fenced in on all four sides; that the fence on the north side had always been approximately 4 feet north of the store building located at the northeast corner of said Lovas tract; that the area lying between this north fence and the canal had always remained open, together with the adjoining area on the west up to the railroad track. In other words, the plaintiff and his witnesses, with one exception, maintain that the only fences existing with reference to this disputed area were the fence running from the highway along the Lovas tract (4 feet north of the store building) for a distance of 2 arpents, and then proceeding across the property of plaintiff to the railroad track on the west, and thence along the railroad track to the Canal, and the other fence proceeding from the Lovas tract in a northerly direction along the highway to the canal.
On the other hand, the defense testimony is to the effect that in addition to the fences testified to by plaintiff and his witnesses, with the exception of one witness, is that the fence on the east side along the highway to the canal was joined at the corner thereof by another fence which followed the canal on its south side for 2 arpents going west and thence south to the northwest corner of the tract measuring 1 by 2 arpents; that this situation existed as far back as 1923 and that the Lovases had always used this additional area between the fence immediately north of the store up to the canal as their property; that there had been a gate from the 1 x 2 arpent tract leading into this additional property for all these years.
It is further testified that this old fence through the years deteriorated, but that signs thereof were still preceptible in 1938, at which time the defendant herein reconstructed the fences, re-enclosing this additional area. One of plaintiff's own witnesses, Eugene Theriot, states that he lived on the Lovas' property in 1931 and that at that time there was a fence "that ran along the *Page 880 
highway, then ran west in a zigzag manner along the canal to the back of Tom's (defendant Lovas') property that went on and hit the fence that had that gate I referred to" (Meaning the fence 4 feet north of the store building). In other words, his testimony corroborated the testimony of the defense witness as to the fence running along the canal in a westerly direction and then running south to the northwest corner of the enclosed 1 by 2 arpent tract.
[7, 8] From the above, it may be noted that there is a conflict of evidence between the plaintiff and defendant and their respective witnesses as to the existence of any fences enclosing portion "B" on the north and west sides, and that such fences were in existence for a period of more than ten years prior to the bringing of this suit. Defendant has the burden of proof. In solving this conflict of evidence and in reaching a conclusion that the defendant had borne the burden of proof, the trial judge states: "But our burden is considerably lightened and a decision on this point becomes quite apparent when we consider the fact that along the line where the fence exists today and where plaintiff's witnesses claim no fence existed, there is a tree of considerable size containing old fence wire embedded to about the middle of its trunk. The conclusion is irresistible that many years ago, perhaps several times ten years there was a fence where defendant and his witnesses claim there was, and that, therefore, the failure of plaintiff's witnesses to have noted this fence was due perhaps to an oversight, lack of memory or perhaps that the fence was temporarily down. It is not necessary that fences remain continuously in good order to constitute an enclosure, upon which to base the prescription of ten years. See Ranger Land Co., Inc., v. Story, La. App.,1 So.2d 410".
An embankment is "an artificial bank or mound of earth." (Webster); it is "a protecting or supporting bank." (Funk 
Wagnalls). The deed providing for the right of way or servitude of the canal was executed on December 8, 1858, and provides for a width of 61 feet at its widest point. As stated before, we do not find any evidence in the record as to how the excavated earth in the digging of this canal was dissipated or scattered and whether it was dissipated only on one side of the canal or whether it was thereafter scattered. Plaintiff, and defendant, in oral argument and in brief, alternately speak of the mound of dirt removed from the canal as an embankment or as the levee. A levee is an artificial mound of earth intended exclusively as a protection from overflow; every levee is, therefore, an embankment, but every embankment is not a levee. From 1858 until 1888 is a space of thirty years. In that space of time, the original dirt removed from the canal may have been so scattered so as to amount to a slight rise of the bank of the canal. It is reasonable to presume that George Lovas took possession of portion "B" and enclosed it. In fact, the evidence preponderates that when defendant took possession under his deed, he went into possession as far as the fence on the bank of the canal and had had open possession of said portion "B" for a period of more than ten years. We therefore find no error in the conclusion of the trial judge.
[9] Plaintiff challenges the good faith of the defendant, the first requirement of Civil Code, Article 3479, supra. He contends that defendant was familiar with this property all of his life, at least from 1910, and that he knew or should have known that the northern boundary of the property he had purchased was a fence about four feet north of his present store running from the highway in a western direction to the railroad right of way. He contends that defendant admitted that he considered his property as being bounded on the north by the embankment of the canal at the time of his purchase in 1919. From a careful reading of his testimony and taking the testimony as a whole, we do not agree with plaintiff's contention that defendant admitted that the extent of his purchase was up to the fence four feet north of his present store building. He was not questioned with reference to the fence as being his northern boundary and we have no testimony as to where the toe *Page 881 
of the embankment was located either in 1888 or in 1919.
The plaintiff further challenges the good faith of the defendant on the ground that in 1938, by notarial act, the defendant purchased from Albert L. Durand, the entire tract in contest, thus showing conclusively that, in 1938 defendant did not believe himself to be the owner of any portion of the property.
[10-12] The good faith of a purchaser is always to be presumed and the one who challenges it bears the burden of proof. Furthermore, the good faith required is at the time of purchase. In order to become a possessor in bad faith thereafter, defendant must have actual notice of a demand made by a party claiming title by the filing of a suit, and he only becomes a possessor in bad faith from such filing of the suit. Conceding for the mere sake of argument that defendant became a possessor in bad faith in 1939 by his purchase from Durand of the property in question, we are of the opinion that defendant had been in open physical possession of portion "B" for more than ten years prior to that acquisition. In no way can it be said that he acknowledged the title to be in plaintiff. In so far as this deed is concerned as between the plaintiff and defendant, it is a matter "res inter alios acta."
Under the facts in this case, we are, like the trial judge, of the conclusion that plaintiff has failed to show that defendant was not a possessor in good faith.
[13] In regard to Portion "A", the evidence is conclusive that defendant only took possession of this portion in 1938, when he purchased the said portion from Durand. He built his fences enclosing the said portion in 1938 or 1939. Although defendant's title calls for property up to the canal, and although defendant contends that possession of a part is possession of the whole, yet as previously stated, defendant only took physical possession up to the northern fence or the whole of tract "B". He cannot claim any property beyond that fence.
We see no necessity to consider defendant's plea of prescription of thirty years.
For these reasons assigned, the judgment appealed from is affirmed.
ELLIS, J., absent; CLEVELAND FRUGE, J., acting as Judge ad hoc.