The plaintiffs, Mr. and Mrs. William G. Aucoin, brought this suit against the New York Casualty Company, the insurer of the Hotel Monteleone, for damages for personal injuries received by Mrs. Aucoin while a guest of the Hotel. They allege that on August 15, 1944, at 10:30 P.M., Mrs. Aucoin was caught between the moving panel and stationary jamb of the revolving door at the entrance of the Hotel, due to the negligence of the hotel management in failing to keep the revolving door in proper condition and repair. The plaintiffs claim $538-31 for medical expenses, hotel charges and traveling expenses and $6,000.00 for pain, sufffering and permanent injury to Mrs. Aucion's right arm.
The defendant filed an exception of no cause of action which was overruled. It then answered reserving its exception and denying any negligence on the part of the management or employees of the Hotel Monteleone.
There was judgment below dismissing plaintiff's suit and they have appealed.
Considering the exception of no right or cause of action filed herein on behalf of the defendant, we are of the opinion that the trial court was correct in overruling this exception for the reason that the plaintiffs' petition does state a cause and a right of action.
The petition recites that Mrs. Aucoin stepped between two of the panels or compartments of the stationary door and caused the door to start revolving by a gentle shove against the panel in front of her and, because of the shove given by plaintiff or some other unknown person, the pressure caused a violent jerk of the door and it was accelerated with such rapidity that the panel directly behind struck Mrs. Aucoin in the back and threw her to the floor. However, on the witness stand, Mrs. Aucoin and her granddaughter testified that Mrs. Aucoin, who was sixty-seven years of age, and her seventeen year old granddaughter, walked through the lobby towards the entrance with the intention of passing through the revolving doorway and on to the sidewalk of Royal Street; that they could see perfectly because the lobby and entrance thereto was well lighted; that the door had not been stationary as Mrs. Aucoin alleged in her petition, but, on the contrary, was revolving because of other persons having used it and, accordingly, Mrs. Aucoin and her granddaughter, who preceded her, paused before entering the door; that the granddaughter then walked through the revolving door without mishap and that Mrs. Aucoin then stepped into the revolving door and was immediately struck by the moving panel to her rear and squeezed between its outer edge and the stationary door jamb.
The petition further alleges that defendant is liable for the accident and resulting injuries in that, it was due to the negligence of the hotel in having 1st, a revolving door which did not afford a safe means of ingress and egress; 2nd, in its failure to keep the axle upon which the door revolved in proper condition, which permitted the door *Page 873 
to revolve with greater rapidity than was safe and, 3rd, in failing to keep the rubber flaps, necessary for the retarded operation of the door, in proper condition.
Defendant answered and specifically urged that the accident and resulting injuries were caused by the joint mishandling of the door by plaintiff and another person, who was then attempting to enter the hotel, and defendant denied that there was any defect in the door or negligence on the part of the hotel management.
The revolving door in question was installed in 1936 and is a "Van Kamel Type". It consists of a perpendicular steel axis or verticle shaft and four panels or wings of heavy plate glass set in steel frames, with a rubber strip on the outside edge of each panel. The whole revolves on ball bearings at the top and bottom of the shaft. A governor, or adaptor, at the top end of the shaft automatically retards the door when persons going through manually shove it beyond a speed consistent with ordinary and prudent use.
Plaintiffs contend that the rubber flanges on the outer edge of each panel are there particularly to retard and control the speed of the door by coming in contact with the side of the door and by forming a compression of the air imprisoned therein. On the other hand, the defendant contends that these rubber strips merely act as weather stripping.
Mrs. Aucoin testified that the rubber strips did not perform their intended function of retarding the speed of the revolving door for they were "worn out, flabby, brittle and frayed". This assertion was denied by the defendant. Mrs. Aucoin and her granddaughter both testified that they had observed the worn out condition of the strips throughout the many years they had lodged at the hotel, for several days on each occasion, and at least one-half dozen times a year, and they had observed that the alleged vice or defect had always been in the mechanism of the door, although they had passed through this revolving door without accident on many occasions; they further testified that three days after the accident the management of the hotel replaced the rubber strips. This assertion was also denied by the defendant.
A careful reading of the evidence has convinced us that the speed, with which this door operates, is regulated by a governor or adaptor at the top end of the perpendicular steel shaft, which automatically retards the door when persons going through manually shove it beyond a speed consistent with ordinary use, and that irrespective of their condition, the rubber strips referred to, could not appreciably retard or decelerate the speed of the revolving door, for they do not slide against the stationary plate glass frame of the doorway and create traction within the cylinder in which the door revolves, but merely contact the four intermittent sections of the frame and close the narrow space between the periphery of the revolving panels and the stationary plate glass enclosure. In substance, we conclude that they are weather strips and do not decelerate the revolutions of the door within the cylinder.
There were several other types of revolving doors discussed in the lower court, the revolutions of which may be retarded by the rubber strips, but we are convinced that the governor or adaptor automatically checks and retards the revolving speed of the door situated in the Royal Street entrance of the Hotel Monteleone and, this is so, irrespective of the good state of repair, presence or absence, of the rubber strips, which are not a mechanical adjunct used in the retardation of the revolutions of this door, but serve merely as weather strips.
The defendant elicited from Mrs. Aucoin the following information which establishes in our minds her negligence:
"Q. Was the door moving when you stepped in? A. Yes, it was, and I believed I could make it.
"Q. It was moving and moving pretty fast and you thought you could make it — is that right? A. That's right."
[1] It is well settled in our jurisprudence that while the owner or operator of a hotel should provide reasonable safe ways of ingress and egress for those legally therein, *Page 874 
he is not an insurer of his guests and is not charged with furnishing perfect or fool-proof ways of ingress and egress. De Latour v. Roosevelt Hotel, La. App., 1 So.2d 353.
Our learned brother below "listened attentively to the argument of counsel and the evidence" and concluded that the revolving door was not defective in any respect and that the accident was caused by and resulted solely from plaintiff voluntarily stepping within the radius of the revolving door, which she had observed and which she knew or had reason to believe was revolving rapidly, but not at such a speed that made it precarious for one to go through it in a reasonably prudent manner.
[2, 3] This is manifestly a case which involves the application of the well known doctrine that the finding of the trial court will not be disturbed or reversed where only questions of fact are involved, unless that finding is obviously erroneous, consequently, and
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.