This is a suit for damages for personal injuries brought by a lady who claims to have sustained a serious injury to her right leg when she fell after she had left her seat in a moving picture theater owned and operated by the defendant Capitol Theaters, Inc., in the City of Baton Rouge. Her total demand is for the sum of $5117 including physical pain and suffering, mental anguish, loss of wages and doctor and other medical expenses. She also sues the American Mutual Liability Insurance Company as the liability insurance carrier of the Capitol Theaters, Inc.
In her petition she very accurately described the interior of the theater which is known as the Hart Theater, situated on Convention Street, the entrance being on the north side of that street. She alleges that when a person enters he walks in a northerly direction through the lobby and then turns to his left and walks down one of the passage ways leading from the lobby to the seats in the theater. There are two such passage ways, one on the extreme northern portion of the theater and the other on the southside of the lobby and there are, towards the western part of the theater, facing the screen, three separate tiers of seats, a large one in the center and the other two being smaller and each separated from the center one by a passage aisle. In the center tier of seats, the last two rows are so constructed that the floor level in front of each is higher than the floor level of the passage aisle which separates the center from the northern tier and the floor level in front of the last two rows of seats is approximately six inches higher than the floor level in the passage aisle. Consequently one desiring to sit in one of the seats in the last rows must step up from the aisle passage way in order to reach the floor level to which the said seats are attached.
Plaintiff alleges that at about 3:30 p.m. December 31, 1946, she purchased an admission ticket at the said theater for the purpose of viewing the picture then being shown and that after entering, she walked to the northern end of the lobby and entered and walked down the passage way which is extended westward from the lobby towards the rear of the aforementioned tiers of seats and upon reaching the second row of said seats she seated herself in the third seat south from the northern passage way and consequently was in the second to last row of seats in the center of the theater. She alleges also that the distance between the seat that she was occupying and the back of the seat in the row immediately in front is such that one cannot walk between the two rows of seats without experiencing great difficulty, and that at the time she seated herself the theater was very dark and visibility was very poor.
She then alleges that after having seen the picture which was being shown, at approximately five or five-thirty o'clock, she arose from her seat and started to leave by way of the northern passage aisle in the theater. That the seat immediately next to hers was occupied and as she attempted to step into the northern aisle the theater was very dark and visibility poor and she was unaware of the fact that the said passage aisle floor level was *Page 65 
lower than the level she was on and she was thrown violently into the aisle injuring her right leg. She avers that she saw no lights burning in the vicinity of her seat which would warn anyone of the difference in the level between the two floors.
She alleges that the cause of her fall was the negligence of the Capitol Theaters, Inc., its employees, agents or servants, in having the passage aisles constructed in such manner that the floor level of the aisle was lower than the floor level of the platform to which the seats were attached and in allowing the difference in level to exist without placing any warning, or in failing to maintain such warning at all times. That they knew or should have known of that difference in the levels and knew or should have known that it was not discernable by its patrons, and that they also knew or should have known that patrons would fall as a result of that difference unless adequate warning was given of the condition existing.
To her petition both defendants jointly filed an exception of no right or cause of action which, upon being heard by the trial judge, was sustained by him and in a judgment subsequently rendered, her suit was dismissed and her demand rejected at her costs. From that judgment she has taken this devolutive appeal.
The point at issue in the case involves the duties of the operators of a theater, and especially those of the operator of a moving picture theater. We do not think that there is much dispute with regard to what his duties are in respect to his patrons and invitees who attend the exhibitions that are offered to the public in his theater and the serious question in this case, as we understand it, is whether the operator of the theater should be relieved from liability as a matter of law, on the allegations made in the plaintiff's petition, or whether, taking all of her allegations to be true, she should not be permitted to offer proof in support of them, with the idea that from such proof, some negligence might appear on the part of the defendant.
The trial judge sustained the exception of no right or cause of action because he found the case of Givens v. De Soto Building Corp. et al., 156 La. 377, 100 So. 534, controlling. The criticism made of his ruling on that point lies principally in the fact that that case was decided by the court only after a trial on the merits. The trial judge however also referred to the case of Suggs v. Saenger Theatres, Inc., 15 La. App. 142, 130 So. 817, which he did not interpret to be in conflict with the Givens case, and it is to be observed that the Suggs case was disposed of on an exception of no cause of action.
Counsel for plaintiff stresses the point that if we accept all the allegations of fact made in the petition as being true and correct, that the same express a cause of action. Whilst we agree with that proposition as a general rule, it is also the rule that even though a plaintiff would be able to prove all that is set out in his or her petition and, notwithstanding the proof made under those allegations, he or she could still not recover, an exception of no cause of action is good and should be sustained. Reading all of the allegations made in the plaintiff's petition in this case, in the light of allegations of a similar nature made in the numerous cases like it in which the claims of the plaintiff were denied, it strikes us that the latter rule which we have just referred to can well be applied in this case and the exception sustained.
After all, as stated, the matter resolves itself into what are the duties and obligations, under the law, of owners and operators of such places of amusement with regard to their patrons and obviously if these duties are properly observed by them, they have fulfilled their legal obligations towards their patrons and are not liable for any injuries they may sustain while in the theater. It is definitely established that operators of such places of amusement are not the insurers of the public nor of their patrons.
We find the law prescribing the duties of operators of such places well expressed in American Jurisprudence Vol. 52 p. 290, at Sec. 46. It is there stated as follows: "Theater and public amusement owners and operators are under the *Page 66 
legal duty to their invitees to exercise due care, commensurate with the circumstances, to put and maintain their premises and instrumentalities, and all parts thereof to which persons lawfully present may go, in a safe condition for the uses for which they are intended and designed. Failure of an owner or a proprietor to perform this duty may constitute negligence which renders him answerable in damages to one who suffers injury as a proximate cause of such negligence, if the injured person did not assume the risk of the injury, or contribute to the injury by his own negligence."
At Sec. 47, it is stated: "It is the general rule, of almost universal acceptance, that an owner or proprietor of a theater or public amusement is bound to exercise a degree of ordinary and reasonable care for the safety and protection of his patrons — the degree of care that would be exercised by an ordinarily careful and prudent man in the same position and circumstances. Generally speaking, this obligation is met when the owner or proprietor makes the premises and instrumentalities as little dangerous as reasonable care can make them, having regard to the method and contrivances necessarily used in conducting such a place, and, it has been said, to the activities and conduct of invitees using such place and instrumentalities in the manner which they are ordinarily used for the purpose for which they are designed and intended. Such degree of care is measured by the conduct of the average man, not that of the cautious man of more than average prudence." Further on it is stated that "it is clear that the owner or proprietor of a theater or public amusement is not an insurer of the safety of his patrons; nor is his duty of care and responsibility the same as that of a common carrier of passengers for hire, although in some decisions certain types of public amusement have been brought within the rule applicable to such carriers."
With regard to the construction of the building or premises, at Sec. 49, the law is stated as follows: "One who operates a theater or public amusement is under duty to use ordinary and reasonable care in the construction, equipment, and management of it, having regard to the character of entertainment given and the customary conduct of persons attending such entertainments. * * * In the absence of statutory requirement, however, an owner or operator of a theater is not required, by his duty of due care, to make every place which patrons may use absolutely safe in all circumstances and conditions, and is not charged with liability for everything which may conceivably be regarded as a defect of construction or arrangement. Thus, astep from the aisle of a theater to the floor level where seatsare situated, varying from three and one-half to six andone-half inches, adjoining the space between the back row andthe row immediately in front, has been held not to constitute astructural defect which will support an action for injury to apatron. The raising of seats in a motion picture theater above the level of the aisles has been held not to be a defect of construction which justifies recovery against operators of the theater for injury to a patron sustained in stepping from the level of the seats to the aisle in the semi-darkness of the theater." (Italics ours.)
We are impressed with the thought that in the italicized statement with regard to the negligence charged against the defendant theater owner in this case, in constructing the seat arrangement in its theater by allowing a difference of approximately six inches between the aisle floor level and the platform to which the seats are attached, we have an expression of the rule on that particular point which definitely applies and which, in our opinion, supports the ruling of the trial judge on that phase of the exception. Comparing the language of plaintiff's allegation charging the particular act of negligence against the defendant, in having constructed the passage aisle in which she fell, in such a manner that the floor level of that aisle was lower than the floor level in front of the seat from which she had emerged, the difference being six inches, as also alleged, with the language in the statement just quoted, that a variation in the level between *Page 67 
two such floors of even as much as six and one-half inches does not constitute a structural defect which will support an action such as the one she has brought, we are bound to note the close similarity in the two situations presented and the law being that under such a situation an action for injuries to a patron cannot be supported, we do not see why the defendant in this case should be forced to the necessity of letting the plaintiff adduce proof of all that she has alleged since she could not possibly recover.
However, we do not have to rely only on the statement from the authority we have quoted on this point, for that seems to be exactly what was held by the Supreme Court of this State in the Givens case [156 La. 377, 100 So. 535], already referred to. After considering the testimony which had been adduced before the trial court in that case, notwithstanding that it had the case before it on the merits, the court said this: "But we need no evidence to satisfy us that it is not per se faulty construction to place the seats of an auditorium or theater on a higher level than the aisles between them; such an arrangement has advantages which are obvious, especially where there is constant coming and going through the aisles while performances are in progress."
Coming now to what we take to be the other charge of negligence aimed at the defendant theater owner, that is, permitting such a condition of construction to exist without placing a warning in the difference between the floor levels, which we understand to mean that the particular spot in the theater was not sufficiently lighted, we refer again to American Jurisprudence, same volume, at page 295, Sec. 51, where it is stated: "It is a general rule that the proprietor of a motion picture house must use ordinary and reasonable care for the safety of patrons with respect to lighting conditions within the theater and in portions thereof, such as steps, aisles, rest rooms, and the like, provided by him for the use, comfort or convenience of patrons, or to which they may properly go as invitees." Further in the same section, it is stated: "Where a patron was injured in attempting to leave hisseat in a theater, it has been held that lighting which wassufficient to enable him to enter safely and find his seat wassufficient to enable him to depart safely, and to relieve theproprietor from liability for his injury. It has been held thatthe proprietor of a motion picture theater is not negligent infailing to light the floor of the theater at a point wherethere is a change of level between the seats and the aisle,especially where no patron has suffered injury at such pointalthough thousands have traversed it * * *. In determining what constitutes due care in the lighting of motion picture theaters, two conflicting factors are to be considered: the need for sufficient light to enable patrons to find or leave their seats during the exhibition of a picture, and the need for sufficient darkness for the effective showing of a picture without eye-strain to those observing it." (Italics ours.)
Let us now take those statements of what the law is and apply the language to the allegations charging negligence on that point to the defendant theater owner in this case. In the first place we find the plaintiff alleging in Art. 13 of her petition that when she seated herself, "the interior of the said theater was very dark and visibility was very poor." According to further allegations she remained so seated for approximately two hours and then, in Art. 16, she alleges that when she attempted to step out into the aisle after having left her seat "the interior of said Hart Theater was dark and visibility poor and she was unaware of the fact that the passage aisle floor level was lower than the floor level she was on." Further she alleges that she saw no lights burning in the vicinity of where she fell which would warn anyone of the difference in the floor level. That she saw no lights herself does not necessarily mean that there were no lights.
But, under the statement of the law, as we have just seen, the proprietor of a moving picture theater is not negligent merely in failing to light the floor of his theater at a point where there is a change of level between the seats and the *Page 68 
aisle. That seems to be based on the fact that thousands of people enter such theaters daily and so very few, apparently, are injured. More important still, it seems to be based on the very nature of the business of operating a moving picture theater, which, as we can very well take judicial cognizance of, cannot be operated where light is too strongly diffused. That proposition is distinctly stated in the case of Givens v. De Soto Building Corp., supra. In fact it is stated a little more strongly and favorably on behalf of the theater owner because this is the language used: "Moving pictures, as we have said, require some degree of darkness; nevertheless such theaters are never so dark that one may not see persons and objects around him, which become quite distinct after a while spent in the semidarkness. And there is no reason that we know of, or shown by the evidence in this case, why persons who have been in one of these theaters for an hour or so cannot see the floor on which they walk; nor had defendant (the theater owner) any reason to suppose that any one would fail to do so." In the present case, plaintiff, as we have pointed out, first alleged that when she seated herself, the interior of the theater was "very dark and visibility was poor." That was at a time when she had come from either broad daylight or from more powerful light in the lobby of the theater into this strong darkness where visibility was poor. Under the reasoning of the Supreme Court in the Givens case, which is thoroughly sound, if she had occupied her seat in the theater for two hours, her eyesight necessarily had become accustomed to the darkness and to the kind of visibility that existed, and therefore she should have been more capable of seeing her way from her seat than at the time she entered it.
Making a comparison again, between what the law is as stated in the authorities cited, and the allegations of plaintiff's petition on this charge of negligence against the defendant theater owner, we are of the opinion that even if she proves everything that she has alleged in her petition on this point, she still could not recover because there is no negligence on the part of that defendant.
In brief before this court, counsel for plaintiff invoke the rule of "momentary forgetfulness" which is sometimes applied in the law of negligence and refer to the case of Gustine v. Big Chain Stores, Inc., La. App., 180 So. 852, 854, in which that doctrine is discussed. As pointed out in the authority cited in that case, the rule contemplates that the forgetfulness of a danger by which a person may be excused of his negligence is one that is induced by "some sudden and adequate disturbing cause." We find nothing whatever in the record in this case from which to infer that plaintiff's forgetfulness, if any, of the difference between the floor levels, was induced by any such cause and for that reason we hold that the rule cannot be applied.
The judgment appealed from properly disposed of the issues presented in the case and for the reasons herein stated, it is hereby affirmed at the costs of the plaintiff, appellant herein.