**WRIGHT v. PARAMOUNT–RICHARDS
THEATRES, Inc. et al.**

**Civ. A. No. 3165.**

United States District Court
W. D. Louisiana, Monroe Division.

June 19, 1951.

Albin P. Lassiter, Monroe, La., Walker & Wright, Ruston, La., for plaintiff.

Oliver & Digby and McVea Oliver, all of Monroe, La., for defendants.

DAWKINS, Chief Judge.

This is an action in tort for injuries alleged to have been received through the negligent construction and maintenance of a theatre building in the City of Monroe, Louisiana.

The matter now for consideration is a motion by the defendants for judgment not-

834

withstanding the verdict in plaintiff's favor, and in the alternative for a new trial.

Pertinent allegations of the complaint are as follows:

"12.

"The Defendants, Paramount-Richards Theatres, Inc., and Paramount-Richards Enterprises, Inc., or either of them, provide a women's lounge or rest room inside of the movie theatre building, 'Paramount Theatre,' for the convenience of the women customers of the theatre, and invite its use by a sign, especially designed for that purpose, and it is so placed that only a customer will have access thereto, and has a door leading therein from a lobby or hallway.

"13.

"On December 19, 1949, while a customer in said 'Paramount Theatre,' your petitioner, Mrs. F. Z. Wright, accepting the invitation to use the facilities of the women's lounge or rest room, pushed open the door leading therein, and fell to the floor of the said women's lounge or rest room, causing serious and permanent injuries to her body, which will be particularized hereafter.

"14.

"The floor of the lobby or hallway from which the door of the women's lounge or rest room opens is several inches higher than the floor of the women's lounge or rest room, and on December 19, 1949, was painted an identical color as the floor of the women's lounge or rest room, thus giving a customer, and more especially your Petitioner, Mrs. F. Z. Wright, the allusion (sic) that the floor was continuous and even, with no difference in elevation, and being imperceptible to the human eye that there really existed an elevation at this described entranceway.

"15.

"In addition to the identical coloring of the floors, above described, the lighting was poor both in the lobby or hallway and in the women's lounge or rest room, and arranged in such manner as to deter rather than to aid a customer of the said 'Paramount Theatre' in making a safe entrance into the room provided for its customers, and such light was inadequate and in fact most hazardous.

"16.

"The fall and injuries incurred therein was caused by the manner in which the entranceway to the women's lounge or rest room was constructed and maintained, and the inadequate light provided by the 'Paramount Theatre,' all of which was known to the agents and employees and officers of the Defendants, Paramount-Richards Theatres, Inc., and Paramount-Richards Enterprises, Inc., and said Defendants, or either of them, should have known that the combination, either of them alone, constituted a hazard to its invited customers.

"17.

"There were no warning signs of any nature to advise of the danger existing, on December 19, 1950, but your Petitioner, Mrs. F. Z. Wright, is advised, and being so advised believes, and so believing avers that since that date several large and plainly visible warnings have been posted to advise the invitees of the difference in elevation of the two floors, above described, and that more adequate lighting facilities have been installed both inside and outside of the women's lounge or rest room, and that a carpet or other covering of a color easily distinguishable from the floor of the women's lounge or rest room has been installed on the floor of the lobby or hallway at the entrance of the women's lounge or rest room, for the purpose of removing the allusion (sic) which constituted a trap and caused the fall of your Petitioner, Mrs. F. Z. Wright."

The allegations of fact as to how the accident happened are substantially admitted, but all charges as to insufficiency of lighting and the unsafe character of the construction are denied, and the defendants plead especially contributory negligence.

There is little dispute as to the facts, which, for the purposes of the motions now to be considered, are as follows:

Plaintiff was an admission-paid patron of the defendant theatre, having the status in law of an invitee; after seeing the current picture and before leaving the theatre, she, with a relative, a daughter as it is recalled (the note of evidence not having been transcribed), repaired to the ladies' rest

room on the same floor; the hall, lobby or passage separating the theatre proper from the rest room was lighted in the usual or customary manner; the floor of the rest room is several inches lower than that of the hall, but there was light in the former of sufficient brilliance to permit anyone with average vision to see, and the plaintiff admits as a witness that she could have seen the step down had she been expecting or looking for it. She was also, as stated, accompanied by the relative, on one or the other sides of her, who likewise could have seen the step. However, the contention, in effect, is that having had no warning of the difference in the levels of the floors, it was assumed they were the same, the door was pushed open, and the plaintiff, an elderly lady of, according to the complaint, more than sixty years, simply stepped forward, fell and was seriously injured.

So, primarily the matter comes down to the point of whether the failure to place a warning sign either on the door or where it could be seen, such as "Step Down," or similar notice, was actionable negligence entitling complainant to recover.

■ This court, as in all cases of this kind, is just another tribunal for interpreting and applying the state law, and is bound by the decisions of the state courts, both in the interpretation of its constitutional and statutory law, and by their pronouncements upon issues such as we have here. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and later decisions to the effect that the same rule applies to the jurisprudence of the state. As this court construes the pertinent decisions, the line of demarcation between those in which liability has been found against the operators of businesses to which the public is invited as customers, and those in which recovery is denied, is substantially this: All are bound to exercise such a degree of care as is dictated by reason and common sense in each particular situation, but are not insurers, and where liability was found, the defect was such that the complainant could not by the exercise of reasonable care have discovered and avoided the accident.

The leading cases in which liability has been found, particularly as to theatres, are reviewed and cited in Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444, by the then Associate and now Chief Justice of the State Supreme Court.

■ On the other hand, the decisions relied upon by the defendants are principally these: Knight v. Travelers Ins. Co., 1947, First Circuit, 32 So.2d 508, by one of the Courts of Appeal (which have final appellate jurisdiction in all personal injury cases, regardless of the amount involved, but subject to review at the discretion of the Supreme Court on certiorari); McKelvy v. Capitol Amusement Co., 1935, La.App., Second Circuit, 159 So. 143; Suggs v. Saenger Theatres, 1930, Second Circuit, 15 La.App., 142, 130 So. 817; Givens v. De-Soto Bldg. Co., 1924, Supreme Court on appeal from the First Circuit, 156 La. 377, 100 So. 534; Black v. American Mut. Liability Ins. Co., 1948, La.App., First Circuit, 37 So.2d 63; DeLatour v. Roosevelt Hotel, 1941, La.App., Orleans Court of Appeal, 1 So.2d 353; Aucoin v. New York Casualty Co., 1948, La.App., Orleans Court of Appeal, 35 So.2d 871; and Marks v. this same defendant decided by one of the judges of the state trial court for the district composed of Ouachita and Morehouse Parishes, wherein it was held in the identical situation involved here, where, it is conceded, another elderly lady was injured in a similar fall, that there was no liability. This court ruled out the record in this last mentioned case when it was offered as a whole by defendants here, and no copy of the opinion, if handed down, has been made available to him.

■ Taking the citations up in the order above enumerated, it should be noted that all adhere to the general principle that owners and operators of buildings to which the public is invited as customers are bound to exercise such a degree of care as is dictated by the particular situation involved.

In Cassanova v. Paramount-Richards Theatres, supra, by the State Supreme Court, the factual situation was detailed as follows:

"The balcony, where the accident occurred, contains slightly more than 1,300 seats that are placed in rows or tiers ex-

836

tending the width of the theatre, each being about twelve inches higher than the one in front, with the result that the back of the balcony is a great deal higher than the front. Because of the distance between these tiers, an intermediate step has been placed between them in the aisle-stairways that are negotiated in reaching the varying levels, but because this intermediate step does not extend to the seat standards, an open space dropping abruptly from the intermediate step to the level of the tier on which the seats are located—some five or six inches below—exists between the ends of the intermediate steps and the standards of the seats. This space varies from 2½ inches at the back to 3¾ inches at the front, because of the curvature of the seating arrangement, and the arms of the seats, some eighteen or twenty inches higher than the top of the intermediate steps, extend partially over this space.

"On the night in question the plaintiff, who had been accompanied to the theatre by her son and daughter-in-law, left her seat in row 'F' and, while endeavoring to descend the aisle-stairway adjacent thereto, attempted to put her right foot on the intermediate step that was adjacent to row 'D' but caught it in the space between the intermediate step and the standard of the end seat in row 'D' and fell into a sitting position, with her left foot under a seat in row 'C'. As a result she sustained a fracture of both bones of her left ankle joint commonly known as 'Pott's Fracture.'

"As previously pointed out, the Court of Appeal was of the opinion that this space was not dangerous, principally, if not entirely, because the theatre was of standard design and constructed by an eminent architect, and its safe aspect accentuated by the fact that no similar accident had happened during the years since its construction. The court also concluded that the lighting on the aisle-stairway was standard and sufficient, although it did point out in the opinion [11 So.2d 238, 241] that 'the evidence as to whether in that part of the theatre [where the accident occurred] the lighting was adequate is quite conflicting.' (Brackets ours.)

"The evidence shows that the step construction complained of by the plaintiff is not to be found in any of the other large theatres of this city where moving pictures are exhibited. Besides, Mr. Weil stated that the spaces between these intermediate steps and the seat standards could have been covered at a nominal cost and the aisle-stairways thus made safer for the patrons.

"The fact that the lighting and construction of this building is in accordance with standard and custom 'is merely evidentiary and is not conclusive of the question of ordinary care. The standard of care is ordinary care under the circumstances, and not what others have done under like circumstances.' " [204 La. 813, 16 So.2d 447.]

The trial court had found for the plaintiff, the Court of Appeal reversed, but the State Supreme Court reinstated the judgment in favor of plaintiff. Two of the justices concurred "only in the decree" and "in the result," the then Chief Justice announcing disapproval of the majority holding that similar accidents in substantially the same circumstances were not admissible in evidence, but approving the reception of evidence that thousands of patrons had attended the theatre over many years without accident. In a per curiam, on rehearing, the court added: "Upon a reconsideration of the record including this evidence and giving it full probative value, it is our opinion that the operator of the theatre by exercising ordinary care and foresight could have and should have anticipated that one of its patrons would step into the opening as it was adjacent to the steps where the patrons were required to walk and there was no light or any other precaution used to direct the attention of those using the stairs to the presence of the opening. Since there was not any balustrade, the only support one would have in using the stairway would be the backs of the seats and necessarily the party would have to be walking close to the ends of the seats where the openings in question were permitted to remain. The operator of the theatre concedes that it knew of the presence of the opening and that it could have

remedied the same. Therefore, the defendant which operated the theatre was lacking in the exercise of ordinary care and prudence and guilty of negligence in causing the plaintiff's injury."

In Knight v. Travelers Ins. Co., by the First Circuit, it was stated:

"From a review of the testimony, it seems clear that Mrs. Knight on her first visit to this store, was attracted by the meat display and that her attention was focused entirely on this meat, which was hanging on hooks over the main counter, and that not knowing her surroundings, she proceeded, without paying any attention to the floor level, and as a result stumbled on the step or missed the step and thereupon fell. The question is can we, on these facts, convict Ourso & Company of negligence, in view of the other facts with reference to the construction and lighting of the department store? The evidence preponderates to the effect that the floors of the two departments were of contrasting colors and that the division, including the step between the two departments, was well lighted, both by a sky light and by artificial lights. The fact remains, however, that there were no warning signs of any kind.

"It is also shown that although 600 customers, on the average, entered the store each day, six days a week, since 1941, only two other accidents occurred at the drop between the two floor levels, both of which were obviously minor accidents, and one of which was admitted by the customer to have been due to her negligence." [32 So. 2d 511.]

After quoting from several other cases, the court concluded: "We find these cases to be apposite to the case at bar and are decisive of the issues therein. These cases are in line with our jurisprudence holding that a storekeeper's obligation to his customers and invitees is to use ordinary care to keep the aisles, passageways and floors of his premises in a reasonably safe condition. Hays v. Maison Blanche Company, La.App., 30 So.2d 225, and the cases therein cited"; and the judgment of the trial court in favor of the defendant was affirmed.

In McKelvy v. Capitol Amusement Co., an exception of no cause of action was sustained by both the trial and appellate courts. The facts alleged were:

"That plaintiff purchased a ticket, climbed a stairway to the balcony and occupied a seat there; that some time later she went to the ladies' dressing room in the balcony, ascended the steps leading thereto and entered.

" 'Petitioner shows that after being in said dressing room several minutes, she left same; that immediately after leaving the said Ladies' Dressing Room, she paused for some time just outside the doorway for the purpose of gaining her bearings so that she might safely return to the seat which she had been occupying in said balcony; that your petitioner took several steps forward and fell down the stairway and elevated portion of said balcony leading from the top of said balcony and from the said Ladies' Dressing Room to that portion of the balcony where was located your petitioner's seat.

" 'Your petitioner shows she fell one or more steps and finally landed upon the rear of a tier of seats in the back portion of said balcony. * * *

" 'Your petitioner shows that at the time your petitioner gained entrance into said theatre, said balcony was dark and improperly lighted; that in fact said balcony was maintained at said time by defendant, Capitol Amusement Company, Inc., in such a darkened condition that it was impossible for petitioner, or any other patron of said theatre, to make their way from the seats provided for patrons to the place provided by the said theatre as the Ladies' Dressing Room for the use of patrons; that no light whatsoever was maintained by said defendant in the neighborhood of said dressing room; that there were no floor or footlights along the aisle leading from said dressing room to petitioner's seat or along that portion of the balcony where the floor elevation drops; and said aisle was the normal and natural way as provided by said theatre by which your petitioner must have returned to her seat.

" 'That the floor of said aisle leading from the said Ladies' Dressing Room in

said balcony to petitioner's seat was broken in a number of places by steps spaced at irregular intervals leading from the upper part of said balcony; namely, from that portion where is located the Ladies' Dressing Room to the part of said balcony; namely, where your petitioner's seat was located; and that in order that petitioner regain her seat after leaving said dressing room, it was necessary that she descend said stairway in said aisle.

" 'That said stairway was not lighted in any manner whatsoever; and that although petitioner knew that said stairway was located in said aisle, and although petitioner paused for sometime before the doorway to said Ladies' Dressing Room, said balcony was in such a darkened condition that it was impossible for petitioner to locate the steps in said aisleway.

" 'That there were no other visible signs in said balcony or along said aisleway to guide or aid your petitioner; that there was no rail or other safe, guard along said aisleway which might have assisted your petitioner; that there were no ushers or other persons provided in said balcony for the purpose of escorting your petitioner to the said Ladies' Dressing Room or in aiding her to safely return to said seats provided by said theatre for the use of its patrons and especially for the use of your petitioner. * * *

" 'That your petitioner was not familiar with the general arrangement of the balcony of said theatre and was not familiar with the different floor levels and with the irregularities of said floor and that being unfamiliar with same she moved about in said balcony with extreme care and caution in an effort to prevent the said accident.

" 'That as a result of all of said injuries, said petitioner is now forced to use a crutch constantly and moves about only with extreme difficulty and pain; that all of said injuries and damages are the direct and proximate result of said accident and of the negligence of defendant, the Capitol Amusement Company, Inc., in failing to maintain said balcony in a properly lighted condition and in failing to maintain said stairway leading down the aisle from said Ladies' Dressing Room to petitioner's seat

in a properly lighted condition so that your petitioner and other guests might use said aisleway without seriously endangering themselves in doing so; that said accident and the resulting injury and damages are the direct result of the negligence of defendant in failing to maintain a guard-rail, or other safeguard along said stairway, in said balcony; and that said injuries and damages are the direct result of the failure of defendant, the Capitol Amusement Company, Inc., to place ushers or other attendants in such places along the course which your petitioner was compelled to follow leading from said Dressing Room so as to aid petitioner in regaining her seat.'

\* \* \*. \* \* \* \*

"In sustaining an exception of no cause of action, the court followed the Givens Case, and held that, there being sufficient light for plaintiff to find her way along the aisle, she should have discovered the step and not assumed that the floor was level.

"Though counsel for plaintiff has prepared a thorough and able brief, citing many cases from other states, the facts being so markedly similar, we are constrained to follow the two above decisions of our own courts." [159 So. 144.]

In Suggs v. Saenger Theatres, the plaintiff alleged:

"She further alleged that she entered the theater in the afternoon of June 12, 1929, through one of the vestibules, and that it was dark, particularly to one just entering; that she had never been in the building before and was not familiar with the seating arrangements, and that no usher was present to direct or assist her to a seat; and that there were not any floor or other lights to disclose the platforms on which the seats were placed nor any notice or warning of such obstacles; that she passed along one of the aisles a distance of approximately fifty feet and, on turning from the aisle to enter between tiers of seats, tripped on the edge of the platform on which the seats were placed and fell, sustaining serious injuries." [15 La.App. 142, 130 So.2d 818.]

The appellate court affirmed the sustaining of an exception of no cause of action by the trial court, citing Givens v. DeSoto

Building Co., and saying: "There cannot be any doubt that one, in passing along the aisle, with the seats rising in tiers along the side of the aisle, must have realized that the aisle was on an incline and [realized] that the seats were arranged so as to compensate for the incline; and it having been held in the case cited that the defendant was not guilty of any negligence in having the theater so arranged, and it being necessary to maintain the theater in semidarkness, as stated in the case cited, we do not think that plaintiff should have assumed that the aisle was on the same level as the floor between the tiers of seats, but that, knowing that the aisle was on an incline and that the seats were arranged in tiers, she should have assumed to the contrary; and if she had done so, and proceeded accordingly, the accident would not have occurred."

Givens v. DeSoto Building Co. was in all respects the same as Suggs v. Saenger Theatres, and the judgment of the trial court sustaining the exception of no cause of action was likewise affirmed.

In Black v. American Mut. Liability Ins. Co., the judgment of the trial court sustaining the exception of no cause of action was also sustained, the pertinent allegations of the complaint being as follows:

"Plaintiff alleges that at about 3:30 p. m. December 31, 1946, she purchased an admission ticket at the said theater for the purpose of viewing the picture then being shown and that after entering, she walked to the northern end of the lobby and entered and walked down the passage way which is extended westward from the lobby towards the rear of the aforementioned tiers of seats and upon reaching the second row of said seats she seated herself in the third seat south from the northern passage way and consequently was in the second to last row of seats in the center of the theater. She alleges also that the distance between the seat that she was occupying and the back of the seat in the row immediately in front is such that one cannot walk between the two rows of seats without experiencing great difficulty, and that at the time she seated herself the theater was very dark and visibility was very poor.

"She then alleges that after having seen the picture which was being shown, at approximately five or five-thirty o'clock, she arose from her seat and started to leave by way of the northern passage aisle in the theater. That the seat immediately next to hers was occupied and as she attempted to step into the northern aisle the theater was very dark and visibility poor and she was unaware of the fact that the said passage aisle floor level was lower than the level she was on and she was thrown violently into the aisle injuring her right leg. She avers that she saw no lights burning in the vicinity of her seat which would warn anyone of the difference in the level between the two floors." [37 So.2d 64.]

After citing at length from American Jurisprudence, Volume 52, Section 46 et seq., as to the rule of law in such cases, the court stated: "However, we do not have to rely only on the statement from the authority we have quoted on this point, for that seems to be exactly what was held by the Supreme Court of this State in the Givens case (156 La. 377, 100 So. [534], 535), already referred to. After considering the testimony which had been adduced before the trial court in that case, notwithstanding that it had the case before it on the merits, the court said this: 'But we need no evidence to satisfy us that it is not per se faulty construction to place the seats of an auditorium or theater on a higher level than the aisles between them; such an arrangement has advantages which are obvious, especially where there is constant coming and going through the aisles while performances are in progress.' "

And on the subject of lights, the court further quoted approvingly from Section 51, page 295 of the same Volume of American Jurisprudence as follows: " 'It is a general rule that the proprietor of a motion picture house must use ordinary and reasonable care for the safety of patrons with respect to lighting conditions within the theater and in portions thereof, such as steps, aisles, rest rooms, and the like, provided by him for the use, comfort or convenience of patrons, or to which they may properly go as invitees.' "

DeLatour v. Roosevelt Hotel involved steps or a stairway in the hotel, and has no similarity to the case at bar, except that the plaintiff in descending them tripped and fell, causing his injuries. His complaint was the irregular manner in which they were constructed, failure to cover the steps with carpets, absence of handrails, etc. The Court of Appeal reversed a judgment in plaintiff's favor on the ground that, even if true, the alleged conditions did not constitute actionable negligence on the part of the hotel.

In Aucion v. New York Casualty Co., the Court of Appeal for the Parish of Orleans also affirmed the lower court's judgment dismissing the suit after trial. It was an action involving charges of negligence in the construction of a revolving door in the Monteleone Hotel in the City of New Orleans. The Court said: "Our learned brother below 'listened attentively to the argument of counsel and the evidence' and concluded that the revolving door was not defective in any respect and that the accident was caused by and resulted solely from plaintiff voluntarily stepping within the radius of the revolving door, which she had observed and which she knew or had reason to believe was revolving rapidly, but not at such a speed that made it precarious for one to go through it in a reasonably prudent manner." [35 So.2d 874.]

■ Due consideration of these decisions of the state courts leads to the conclusion that, in order to render the owner of the building liable, where otherwise construction is according to normal and usual designs, with no general defects which a reasonably prudent operator in the particular circumstances would be bound to know about and correct, the alleged faulty situation must be one which is hidden from the view and knowledge of the complainant to such an extent that by the exercise of reasonable care it could not be discovered.

■ In this case, while it is true that one going out of a picture show and the semi-darkness incidental thereto would need a few seconds for his eyes to adjust to the change in light, it goes without saying that in this case this adjustment was sufficient for the plaintiff to see the door and its letters of "Ladies" or "Rest Room" in order to reach and open it. When she did this, she was also bound to realize she was entering another room and she could not assume without exercising reasonable care that it was on the same level with the hall she was leaving. It was not disputed that there was light in the rest room, and in fact plaintiff admits that had she looked down, she could have seen the step, but neither she nor the relative who accompanied her took that precaution. Plaintiff simply stepped forward and because of the lower level in the rest room, lost her balance and plunged forward. If there was negligence, it would seem that it was that of the plaintiff and her companion in not exercising the precaution of looking before she stepped forward. The case, for this reason, is even stronger than that of Knight v. Travelers Ins. Co., because in that case the step down was in a single, continuous large building or room with no doors to pass through.

■ This court has made a practice under the New Rules of Civil Procedure, 28 U.S.C.A., where there is any basis for different interpretations of the facts, to overrule motions for directed verdicts, but reserves final judgment until the jury has acted; the reason being that in this way the case can finally be disposed of on appeal, without the necessity of a remand for new trial if the appellate court disagrees with its determination of the matter.

There should be judgment for defendant.