**WRIGHT v. PARAMOUNT–RICHARDS THEATRES, Inc. et al.**

No. 13836.

United States Court of Appeals
Fifth Circuit.

July 18, 1952.

Rehearing Denied Sept. 10, 1952.

Albin P. Lassiter, Monroe, La., for appellant.

C. McVea Oliver, Monroe, La., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment for the defendants entered by the Court notwithstanding the verdict of the jury for the plaintiff.

Mrs. Wright was an admission-paid patron of the theatre. She had never been to this theatre before. She was an elderly lady, accompanied by her daughter who held on to her arm and assisted her in walking. After viewing the moving picture, and before leaving the theatre, she and her daughter attempted to enter the women's rest room on the main floor. The floor of the rest room is approximately six inches lower than the hallway from which a patron must enter. The door opens outward into the hall. There was sufficient light in the hall to permit anyone with average vision to see, and Mrs. Wright as a witness admitted that she could have seen the step down had she been expecting or looking for it. There was no warning sign either on the door or elsewhere such as "Step Down", or similar notice. Mrs. Wright took one step and fell to the floor of the rest room, causing fractures of her hip to such an extent that she is permanently confined to the use of a wheel chair.

The District Judge overruled the defendants' motion for a directed verdict stating that if the verdict of the jury should be for the plaintiff, he would then take up the matter on motion for judgment notwithstanding the verdict. The jury returned a verdict for $16,000 in favor of the plaintiff. Subsequently, the motion for judgment notwithstanding the verdict was granted and judgment entered for the defendants.

In explanation of this action, the District Judge wrote a full and able opinion covering 21 pages of the record. He called attention that under the rule in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, "This court, as in all cases of this kind, is just another tribunal for interpreting and applying the state law, and is bound by the decisions of the state courts, both in the interpretation of its constitutional and statutory law, and by their pronouncements upon issues such as we have here." [97 F.Supp. 835.] He then reviewed at length the facts of most of the pertinent Louisiana decisions.[1] In addition to the published decisions, he called attention to the case of Marx v. these

---

1. Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444; Knight v. Travelers Ins. Co., La.App.1947, First Circuit, 32 So.2d 508; McKelvy v. Capitol Amusement Co., La.App.1935, Second Circuit, 159 So. 143; Suggs v. Saenger Theatres, 1930, Second Circuit, 15 La. App. 142, 130 So. 817; Givens v. DeSoto Bldg. Co., 1924, Supreme Court on appeal from the First Circuit, 156 La.

same defendants decided in 1941 by one of the judges of the Fourth Judicial District Court of the State of Louisiana for the Parish of Ouachita, "wherein it was held in the identical situation involved here, where, it is conceded, another elderly lady was injured in a similar fall, that there was no liability."

The District Court had refused to admit in evidence the record in the Marx case and the appellees urge upon this appeal that if it is held to have been error for the District Court to grant the motion for judgment notwithstanding the verdict, that then the case should be remanded for a new trial with instructions to admit in evidence the record in the Marx case and to instruct the jury that if it finds as a fact that the conditions were the same in both cases that then it must find for the defendants.

■ We regret that we cannot agree with the painstaking opinion of the learned District Judge. It is true that under the landmark decision in Erie Railroad Co. v. Tompkins, supra, this Court, as well as the District Court, sits in this case just as another tribunal for interpreting and applying the substantive law of the State of Louisiana. It is true, also, as said in Guaranty Trust Company v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, that,

"In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. ·The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result."

However, in federal courts the principle just adverted to must give way to the overriding consideration that the federal court is bound by the Seventh Amendment to the Constitution of the United States. See Gillen v. Phoenix Indemnity Co., 5 Cir., 198 F.2d 147. An opinion rendered by the Supreme Court of the United States, nearly a century and a quarter ago, is pertinent, Parsons v. Bedford, Breedlove & Robeson, 3 Pet. 433, 28 U.S. 433, 7 L.Ed. 732. In that case Mr. Justice Story, speaking for the Court and considering the supremacy of the Seventh Amendment over the conformity act of 1824 as applied to Louisiana, 3 Pet. 447, 448, 449, 28 U.S. 447, 448, 449, 7 L.Ed. 732, said:

"'No fact, tried by a jury, shall be otherwise re-examinable, in any court of the United States, than according to the rules of the common law.' This is a prohibition to the courts of the United States to re-examine any facts tried by a jury, in any other manner. * * *

"Was it the intention of congress, by the general language of the act of 1824, to alter the appellate jurisdiction of this court, and to confer on it the power of granting a new trial, by a re-examination of the facts tried by the jury? to enable it, after trial by jury, to do that in respect to the courts of the United States, sitting in Louisiana, which is denied to such courts sitting in all the other states in the Union? We think not. No general words, purporting only to regulate the practice of a particular court, to conform its modes of proceeding to those prescribed by the state to its own courts, ought, in our judgment, to receive an interpretation, which would create so important an alteration in the laws of the United States, securing the trial by jury. Especially, ought it

377, 100 So. 534; Black v. American Mut. Liability Ins. Co., La.App.1948, First Circuit, 37 So.2d 63; De Latour v. Roosevelt Hotel, La.App.1941, Orleans Court of Appeal, 1 So.2d 353; Aucoin

v. New York Casualty Co., La.App.1948, Orleans Court of Appeal, 35 So.2d 871; Hays v. Maison Blanche Company, La. App., 30 So.2d 225, and the cases therein cited.

not to receive such an interpretation, when there is a power given to the inferior court itself to prevent any discrepancy between the state laws and the laws of the United States; so that it would be left to its sole discretion to supersede, or to give conclusive effect in the appellate court to the verdict of the jury.

"If, indeed, the construction contended for at the bar were to be given to the act of congress, we entertain the most serious doubts, whether it would not be unconstitutional. No court ought, unless the terms of an act rendered it unavoidable, to give a construction to it, which should involve a violation, however unintentional, of the constitution. The terms of the present act may well be satisfied, by limiting its operation to modes of practice and proceeding in the court below, without changing the effect or conclusiveness of the verdict of the jury upon the facts litigated at the trial. Nor is there any inconvenience from this construction; for the party has still' his remedy, by bill of exceptions, to bring the facts in review before the appellate court, so far as those facts bear upon any question of law arising at the trial; and if there be any mistake of the facts, the court below is competent to redress it, by granting a new trial."

The practice in the Courts of Louisiana was well outlined by Mr. Justice McLean in his dissenting opinion in that case, 3 Pet. 450, 28 U.S. 450, 7 L.Ed. 732:

"In the state of Louisiana, the principles of the common law are not recognized; neither do the principles of the civil law of Rome furnish the basis of their jurisprudence. They have a system peculiar to themselves, adopted by their statutes, which embodies much of the civil law, some of the principles of the common law, and, in a few instances, the statutory provisions of other states. This system may be called the civil law of Louisiana, and is peculiar to that state."

Continuing to describe the Louisiana practice, Mr. Justice McLean said, 3 Pet. 451, 28 U.S. 451, 7 L.Ed. 732, "The facts found by the jury are examined by the appellate court, and its judgment is given on the facts, without the intervention of a jury."

In Louisiana state courts, the right to trial by jury guaranteed by the Seventh Amendment of the United States Constitution does not exist. The Louisiana Code of Practice of 1870 provides for jury trials in certain civil cases; but appellate courts have the right and duty to review both the law and the facts in all civil cases. La. Constitution of 1921, Art. 7, Sec. 10.

Federal courts are . forbidden by the Seventh Amendment to re-examine any fact tried by a jury otherwise than according to the rules of the common law, while Louisiana state courts can review the facts in all civil cases. As a consequence of that situation, in civil jury cases federal courts evaluating decisions of Louisiana state courts as precedents have the difficult task of separating the decisions of the Louisiana courts on the law from their review of the facts.

The substantive law governing this case has been clearly enunciated by the Supreme Court of Louisiana in two recent decisions; Cassanova v. Paramount-Richards Theatres, Inc., 204 La. 813, 16 So.2d 444, and Allen v. Shreveport Theatre Corp., 218 La. 1008, 51 So.2d 607.[2]

In the Cassanova case the Louisiana Supreme Court said, 16 So.2d 446, 447:

"Although the proprietors of places of amusement that are operated for profit are not generally considered to be insurers of the safety of their patrons * * *, they are, nevertheless charged with the same duty imposed upon the owners or occupants of a building or premise who either directly or impliedly invite or induce others to enter therein, that is, the affirmative duty to use reasonable and ordinary care to keep such building or premise in such a safe condition that the invitees will not be unnecessarily exposed to danger * * *, and to give warn-

2. The latter case was so recent that it evidently escaped the attention of the District Judge.

ing of any dangers that may be hidden or not reasonably observable in the exercise of ordinary care by the invitee. * * *

■ "The authorities are in conflict as to what constitutes reasonable and ordinary care on the part of proprietors of places of public amusement, but we think the authorities holding that, because of the darkened theatres, moving picture exhibitors are held to a stricter account in the performance of this rule express the sounder logic and the better view, for such a rule has the added weight of common sense behind it. * * * As was very aptly stated in the Klatt case [Branch v. Klatt] (165 Mich. 666, 131 N.W. [107,] 109) : 'One would have a right to presume that the defendant had discharged his duty of having the premises in a reasonably safe condition, as to lights and construction; and the ordinary person would naturally suppose that it would be safe to pass along a passageway provided for his exit with reasonable assurance of its being in safe condition. *The very fact of the premises being maintained in a darkened condition might give him (the invitee) added assurance of its being reasonably safe.'* (Italics and brackets ours.)" (The asterisks indicate that the citations of authorities are omitted.)

■ In the case of Allen v. Shreveport Theatre Corp., supra [218 La. 1008, 51 So.2d 609], the Louisiana Supreme Court called attention "that the plaintiff's cause of action is one arising out of a contractual relation which was entered into between him and the operator of the moving picture show to whom he had paid the required price of admission to witness the exhibition that was being offered." Continuing the Court said, "Because of that relation the proprietor of that business owed the plaintiff a particular duty of care, and whilst it may not have been 'the highest type of duty', as alleged by plaintiff in his petition, nor the same strict duty that is required of a common carrier toward his paying passenger, it was nevertheless more than the ordinary duty that is owed to a mere licensee."

■ As to the defense of contributory negligence, the Louisiana court in the Cassanova case stated the rule with equal clearness both in its original opinion and on rehearing. In its original opinion the Court said, 16 So.2d 449:

"Of course, the plaintiff could not have been guilty of any contributory negligence as a matter of law, for as a paying customer of the defendant theatre, she had a right to assume that the premises into which she was invited were safe and was not charged with any legal duty of looking out for lurking or hidden dangers."

On rehearing the Court said, 16 So.2d 450:

"With reference to the plea of contributory negligence, we reiterate that the plaintiff as a matter of fact was not guilty of a lack of proper care and attention because the theatre operator failed to place any warning whatsoever to indicate the presence of the opening into which she stepped and a prudent person by the exercise of ordinary care would not have anticipated there was an opening between the end of the seat and the step in the very aisle which the defendants had provided for the use of the patrons."

■■ We are clearly of the opinion that when the evidence in this case is considered in the light of the substantive principles of law as announced by the Supreme Court of Louisiana that it was well within the province of the jury to find that the defendants were negligent in maintaining the condition described, and further to find that the plaintiff, an elderly woman, assisted by an attentive daughter, was not guilty of any contributory negligence. "Where negligence may reasonably and legitimately be inferred from the evidence, it is for the jury to say whether negligence shall be so inferred." 38 Am.Jur., Negligence, Sec. 345, page 1047.

■ "The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not

the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572, 10 S.Ct. 1044–1049, 34 L.Ed. 235; Tiller v. Atlantic Coast Line R. Co., supra, 318 U.S. [54] 68, 63 S.Ct. [444] 451, 143 A.L.R. 967 [87 L.Ed. 610]; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520.

 "This Court stated some sixty years ago when considering the proper tribunal for determining questions of negligence: 'We see no reason, so long as the jury system is the law of the land and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.' Jones v. East Tennessee U. & G. R. Co., 128 U.S. 443, 445, 9 S.Ct. 118, 32 L.Ed. 478. And peremptory instructions should not be given in negligence cases 'where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences.' Washington & G. R. Co. v. McDade, 135 U.S. 554, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235. Such has ever since been the established rule for trial and appellate courts." Wilkerson v. McCarthy, 336 U.S. 53, 62, 69 S.Ct. 413, 418, 93 L.Ed. 497.

·We think that the learned District Judge in entering judgment notwithstanding the verdict has been led into error through considering the findings of Louisiana courts on facts as distinguished from their decisions on law to be binding upon the jury and the court. For the same reason, however, it was proper for him to refuse to admit in evidence before the jury the record in the case of Marx vs. these same defendants wherein a Louisiana judge had held that the facts of another accident occurring at the identical place did not give rise to liability.

The cause is reversed with instructions to enter judgment on the verdict of the jury in favor of the plaintiff in the amount of $16,000 with interest from the date on which said judgment should have been entered, April 23, 1951. See Opinion on Motion to Amend Mandate, May 27, 1952, in Givens v. Missouri-Kansas-Texas, R. R. Co., 5 Cir., 196 F.2d 905.

Reversed.